**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

|                              |     |                                      |
|------------------------------|-----|--------------------------------------|
| **DUANE JOSEPH JOHNSON,**    | )   |                                      |
|                              | )   |                                      |
| Plaintiff,                   | )   |                                      |
|                              | )   |                                      |
| v.                           | )   | Civil Action No.: 1:09-CV-02056(RBW) |
|                              | )   |                                      |
| **FREDERICK J. SULLIVAN, *ET AL.*,** | ) |                              |
|                              | )   |                                      |
| Defendants.                  | )   |                                      |

_____)

**DEFENDANT ABRAHAM BLITZER'S MOTION TO DISMISS FOR FAILURE TO
STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

Defendant Abraham Blitzer, Esquire, through his undersigned counsel, respectfully

moves to dismiss the Complaint in this case pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure.  As support for this Motion, Mr. Blitzer states that Plaintiff has failed to state a

claim upon which relief can be granted.

1.      Plaintiff's complaint against Defendant Blitzer is for professional malpractice and

breach of fiduciary duty arising out of Mr. Blitzer's post-conviction representation of the

Plaintiff in a criminal matter in the Superior Court of the District of Columbia.

2.      To prove his case of professional malpractice and breach of fiduciary duty,

Plaintiff must demonstrate that, but for Mr. Blitzer's alleged negligence, the outcome of

Plaintiff's post-conviction application for relief would have concluded in his favor.

3.      The Superior Court of the District of Columbia, in the prior criminal matter, has

already ruled that had counsel introduced the evidence that Plaintiff alleges was negligently

omitted both from trial and the post-conviction relief motion, the outcome would have been no different and would not have concluded in Plaintiff's favor.

4.      Plaintiff is bound by the prior rulings of the Superior Court of the District of Columbia and cannot now relitigate the issue of whether, but for Mr. Blitzer's alleged negligence, the criminal matter would have ended favorably for Plaintiff.

5.      Consequently, Plaintiff cannot demonstrate the essential causation element of his claims against Mr. Blitzer.

6.      Alternatively, Plaintiff cannot demonstrate that his Complaint, as filed, sets forth a plausible claim for relief that is not speculative.  This is because there is no allegation in the Complaint that the plaintiff, a lay person, consulted with an expert, prior to bringing suit, as to whether a good faith basis exists to allege that the relevant standard of care was breached. Where a lay plaintiff fails to do so, he cannot have a good faith basis for an assertion of a claim of professional malpractice because it is mere speculation on the part of the plaintiff that the alleged omissions actually constituted a breach of the standard of care.

WHEREFORE, for the foregoing reasons, and for the reasons contained in the accompanying Memorandum of Points and Authorities attached in support of this Motion, Defendant Blitzer respectfully requests that the Court grant his motion to dismiss for failure to state a claim upon which relief can be granted.

*       *       *

December 28, 2009                                    Respectfully submitted,

                                                    JORDAN, COYNE & SAVITS, LLP


                                        By:        */s/ John Tremain May*
                                                   John Tremain May (Bar No.: 294199)
                                                   1100 Connecticut Avenue, N.W.,
                                                   Suite 600
                                                   Washington, DC 20036
                                                   Telephone: 202.296.4747
                                                   Facsimile:  202.496.2800

                                                   *Counsel for Defendant Abraham Blitzer*

## CERTIFICATE OF SERVICE

I, John Tremain May, hereby certify that on December 28, 2009 a true and correct copy

of the foregoing Defendant Abraham Blitzer's Motion to Dismiss for Failure to State a Claim

Upon which Relief May Be Granted was served via first class mail postage prepaid to:

Duane Joseph Johnson
Reg. #09202-007
FCI Petersburg Medium
P.O. Box 1000
Petersburg, VA 23804

Hon. Frederick J. Sullivan
500 Indiana Ave., N.W.
Washington, D.C. 20001

Steven J. McCool, Esq.
Mallon & McCool, LLC
1776 K St., N.W. #200
Washington, D.C. 20006

Joseph J. Bernard, Esq.
5425 Connecticut Ave., N.W.
Washington, D.C. 20015


_/s/ John Tremain May_
John Tremain May

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| **DUANE JOSEPH JOHNSON,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 1:09-CV-02056(RBW) |
| ) | |
| **FREDERICK J. SULLIVAN,** *ET AL.* ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT ABRAHAM BLITZER'S MOTION TO DISMISS FOR FAILURE TO
STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

Defendant Abraham Blitzer, by and through undersigned counsel, hereby submits this

Memorandum of Points and Authorities in support of his Motion to Dismiss for failure to state a

claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6).

S̲U̲M̲M̲A̲R̲Y̲ ̲O̲F̲ ̲F̲A̲C̲T̲S̲

Plaintiff Johnson has named as defendants in this lawsuit the various attorneys who

participated in both the prosecution and defense of a criminal action brought against him in the

Superior Court of the District of Columbia captioned *United States v. Johnson*, 1994 F 4696.

Johnson's complaint alleges two counts against Defendant Blitzer, professional malpractice and

breach of fiduciary duties, based on Blitzer's performance as Johnson's attorney in the Superior

Court action.

Defendant Blitzer, as the Complaint indicates, did not represent Mr. Johnson during his

criminal trial or direct appeal.  Instead, Defendant Blitzer represented Johnson from May of 1998

through July of 1999 during post trial relief proceedings where Blitzer filed a motion for a new

trial on Johnson's behalf.  Complaint ¶ 7; 20. Johnson was represented at trial by Frederick J.

Sullivan, who is also a named defendant in this action.  Complaint ¶ 17.  Johnson's malpractice

and breach of fiduciary duty claims against Blitzer are based on his allegations that Blitzer failed

to investigate, and incorporate into his motion for new trial, facts related to Sullivan's deficient

performance at trial and on appeal.  Complaint ¶ 17; 20; 32.  Johnson raises three factual issues

that allegedly should have been addressed in the motion for new trial:

A.      Johnson specifically contends that Blitzer should have investigated a conflict of

interest that existed because Sullivan had previously represented one of the government's

witnesses – Victor Jeffery Williams – and that he should have incorporated facts related to this

conflict into his motion for a new trial.  Complaint ¶ 17; 20; 32.

B.      Johnson also claims that Mr. Blitzer failed to present Mr. Sullivan's "intentional

interference" with Johnson's plea negotiations.  Complaint ¶ 20.  This intentional interference

appears to be Sullivan's failure to comply with a promise he would present two witnesses for the

defense and explore Williams' criminal background.  Complaint ¶ 44.

C.      Finally, Johnson claims that Blitzer failed to investigate and incorporate into his

motion facts related to the government's suppression of exculpatory evidence related to its

witness, Williams.  Complaint ¶ 32.

As shown below, each of these claims was raised and rejected by Judge Canan in his

Order of August 19, 2008.

## STANDARD OF REVIEW

Dismissal under Fed. R. Civ. P. 12(b)(6) requires the Court to take the allegations of the

Complaint as true and liberally construe them in favor of Mr. Johnson.  *See Major v. Plumbers*

*Local Union No. 5*, 370 F. Supp. 2d 118, 123 (D.D.C. 2005).  But, conclusory factual and legal

allegations need not be considered by the Court.  *See Domen v. National Rehab. Hosp.*, 925 F.

Supp. 830 (D.D.C. 1996).  A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) will be

granted only if it appears beyond doubt that a plaintiff cannot prove any set of facts in support of

his claims which would entitle him to relief.  *Major*, 370 F. Supp. 2d at 123.  The Court is not,

however, "bound to accept as true a legal conclusion couched as a factual allegation."  *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Here, even taking the pleaded facts as true

and liberally construing those facts in favor of Mr. Johnson, his Complaint fails to state a claim

upon which relief may be granted.

## ARGUMENT

**I.      JOHNSON IS COLLATERALLY ESTOPPED FROM ARGUING THAT THE OUTCOME WOULD HAVE BEEN DIFFERENT HAD BLITZER RAISED THE ARGUMENTS OUTLINED IN HIS COMPLAINT**

In order to prove any legal malpractice claim, a plaintiff must prove: (1) that there is an

attorney-client relationship; (2) that the attorney neglected a reasonable duty; and (3) that the

attorney's negligence resulted in and was the proximate cause of the loss to the client.  *Chase v.*

*Gilbert*, 499 A.2d 1203, 1211 (D.C. 1985).  This rule was first laid down in *Niosi v. Aiello*, 69

A.2d 57 (D.C. 1949).  Thus, for Johnson to succeed on his claims against Mr. Blitzer, he must

show that Blitzer's "omission 'resulted in and was the proximate cause of [his loss]' – in other

words, that 'but for [Blitzer's] failure, [he] 'would have had judgment."  *Hobley v. Law Office of*

*S. Howard Woodson, III*, No. 08-CV-446, Slip Op. 2009 D.C App. LEXIS 598 (D.C. Oct. 8,

2009).

Here, Johnson alleges that Mr. Blitzer should have raised an ineffective assistance of

counsel claim in his post-conviction motion for a new trial based on Sullivan's conflict of

interest, the failure to call two witnesses, and the alleged Brady violations.  As shown below,

however, the Superior Court of the District of Columbia has already held that none of Johnson's three claims of ineffective assistance of counsel, as asserted in this Complaint, had any merit.[1] *See* Order of Judge Russell Canan dated August 19, 2008, in *United States v. Johnson*, Case No. 1994 F 4696 (D.C. Super. Ct.)[hereinafter the "Order"], attached hereto as Exhibit 1.  Mr. Johnson is bound by the holding in that Order and cannot now relitigate these issues in this Court.  Accordingly, Johnson cannot now show that, had Mr. Blitzer raised these ineffective assistance of counsel claims, the outcome of the motion for a new trial would have been different.

On February 15, 2006, Mr. Johnson filed a fourth motion with the Superior Court of the District of Columbia seeking to collaterally attack his conviction.  *See* Exhibit 1.  In that motion, Johnson made three arguments as to why his conviction should be set aside:

1.      that trial counsel, Defendant Sullivan, provided ineffective assistance due to a conflict of interest stemming from his prior representation of Victor Williams, which prevented Sullivan from investigating and pursuing the defense that Williams was the shooter, impeaching Williams on his prior convictions, introducing testimony from other victims of violence committed by Mr. Williams, and failing to advise Johnson of his right to note an appeal from his resentencing;

---

[1]      Although a court considering a motion to dismiss pursuant to Rule 12(b)(6) may not consider "matters outside the pleadings," documents filed in other court proceedings do not constitute "matters outside the pleadings" for purposes of the rule.  *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994); *Mack v. South Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986); *Nix v. Fulton Lodge No. 2*, 452 F.2d 794, 797-798 (5th Cir. 1972).  Similarly, proceedings in related cases may be judicially noticed and considered in the context of a motion to dismiss.  *Cannon v. District of Columbia*, 569 A.2d 595, 597 (D.C. 1990).

2.      that Defendant Blitzer provided ineffective assistance of counsel by failing to raise in a motion for new trial that trial counsel's promise to introduce two witnesses on his behalf induced Johnson to plead not guilty rather than enter an *Alford* plea; and

3.      that Johnson was entitled to a new trial because the government failed to disclose Mr. Williams' 1994 arrest as well as evidence that Mr. Williams had his own gun in his possession prior to trial, which Mr. Johnson claimed was exculpatory favorable evidence. Exhibit 1, p 8-9.  Each of these claims matches the three claims raised in the instant Complaint.

In considering Mr. Johnson's claim with respect to Mr. Blitzer's performance, the Superior Court evaluated the merits of Johnson's claim and held that, to succeed, he would have to show that he was prejudiced by counsel's errors.  Exhibit 1, p 15.  In other words, Johnson would have to show that there was, "a reasonable possibility that but for counsel's error, the result of the proceeding would have been different."  *Id.*

In terms of Mr. Johnson's claim that Attorney Sullivan labored under a conflict of interest during his trial, the Superior Court found that his claim was not based on a conflict created by simultaneous representation.  This was so because Attorney Sullivan represented the government witness, Mr. Williams, in a case involving charges that were not substantially related to those pending against Mr. Johnson.  *Id.* at 24.  The Superior Court, consequently, concluded that Mr. Johnson had:

> failed to demonstrate that trial counsel's prior representation of Mr. Williams resulted in an actual conflict of interest adversely affecting the representation of defendant.  Defendant has not highlighted specific instances where his interests have been impaired or shown any trial strategies that but for the prior representation, trial counsel would have taken.

Exhibit 1 at 26.  In other words, any perceived conflict of interest did not impact the outcome of Mr. Johnson's trial.

5

With respect to Attorney Sullivan's alleged failure to impeach Mr. Williams with his previous convictions, the Superior Court found the government, on direct, had already put the impeaching evidence of the prior convictions before the jury. *Id*. at 24. With respect to the two witnesses who Mr. Johnson alleged would have provided further impeachment of Mr. Williams, the Court found that there was no proof of what those witnesses actually would have testified to, and that the Court of Appeals, on direct appeal, had concluded that any testimony those witnesses could have offered would have been merely cumulative. *Id*.; *Johnson v. United States*, No. 99-CO-978, Slip Op. at 4 (D.C. Aug. 17, 2001). For these reasons, the court concluded that:

> [t]rial counsel's strategies reflect a realistic course that does not appear to be significantly less effective than the course advocated by [Mr. Johnson], nor do they appear deliberately calculated to protect Mr. Williams' interests.

Id. at 25.

Finally, the Superior Court further concluded that evidence of Mr. Williams' 1995 conviction for second degree theft and unlawful entry would not have been admissible at trial for the purpose which Mr. Johnson requested it be admitted – to establish that Mr. Williams was the aggressor in his case to support his theory of self defense. *Id* at 25-26. The court concluded that such a conviction, which had nothing in common with the offense Mr. Johnson was charged with in which he alleged Williams was the aggressor, would not have been admissible for that purpose because it lacked probative value. *Id*. at 26. Nor was there any evidence whatsoever that the testimony of the two witnesses, which Mr. Johnson claimed Attorney Sullivan should have put on, would have established Mr. Williams as the aggressor. *Id* at 24.

In considering the merits of Johnson's clam that Blitzer should have presented the evidence of Sullivan's failure to introduce the two promised witnesses, the court held that Johnson could not show that this omission was either deficient or prejudicial. *Id*. at 15. This

6

was because the Court of Appeals had already determined that the testimony of these two witnesses would merely have been duplicative of evidence provided by other witnesses who were called at trial.  *Id*.; *Johnson v. United States*, No. 99-CO-978, Slip Op. at 4 (D.C. Aug. 17, 2001).  Consequently, the court concluded that even had Blitzer presented argument related to Sullivan's failure to call these witnesses in his motion, the outcome would have been no different.

Finally, with respect to Mr. Johnson's *Brady* claim, the Superior Court found that the claim had no merit because there was no indication "that the evidence at issue was material or would have a reasonable probability of resulting in a different verdict."  Exhibit 1 at 29.  The court ruled that the alleged exculpatory evidence, which was disclosed mid-trial, would not have had a reasonable probability in resulting in a different verdict if disclosed prior to trial.  *Id*. at 31.

In the first instance, all of the alleged exculpatory evidence, which involved the possession of a gun by Mr. Williams and pre-existing relationships between Mr. Williams, other witnesses, and members of the Metropolitan Police, was disclosed in open court and was available for the jury to consider when evaluating the credibility of witnesses, including Mr. Williams.  *Id*. at 30.  In terms of Mr. Williams' 1994 arrest, the court ruled that, though admissible for impeachment purposes, it was not reasonably probable that the jury would have reached a different verdict if evidence of the arrest were admitted.  *Id*. at 31.  Mr. Williams' 1994 arrest did not resemble the crime Johnson was charged with, and would have been insufficient to establish a reasonable possibility that Williams, and not Johnson, was the shooter.  *Id*.  Further, although evidence of Mr. Williams' arrest may have gone to credibility, the case was no papered and there was no evidence that the dismissal was the result of a government deal with Mr. Williams.  *Id*.  Consequently, the court held that the impact of the evidence would have been

7

minimal and would not have presented a reasonable possibility of a different verdict, had it been disclosed prior to trial. *Id*.

Mr. Johnson can prove no set of facts that would allow him to recover against Mr. Blitzer, unless Mr. Johnson is permitted to relitigate the question of whether the alleged actions of Mr. Sullivan would have resulted in a different outcome at his criminal trial had Mr. Sullivan pursued the course Mr. Johnson now suggests. As noted above, Mr. Johnson must demonstrate as a necessary element of his claims that, but for Blitzer's negligent omission of arguments related to Mr. Sullivan's above described failings, the motion for new trial would have been granted. For Mr. Blitzer's motion for a new trial to be successful on these grounds, he would have had to demonstrate ineffective assistance of counsel on the part of Mr. Sullivan. But, the Superior Court has ruled that Mr. Sullivan's alleged omissions would not have constituted ineffective assistance with the result that, even had Mr. Blitzer raised the issues, the motion for new trial still would not have been successful.[2] To the extent, then, that Mr. Johnson is bound by the Superior Court determination, he cannot prevail here.

The doctrine of collateral estoppel governs when and whether a litigant will be permitted to revisit and retry an issue in a subsequent action that has already been decided by a prior court. In the District of Columbia, the doctrine of collateral estoppel, or issue preclusion:

> renders conclusive in the same or a subsequent action
> determination of an issue of fact or law when (1) the issue is
> actually litigated and (2) determined by a valid, final judgment on

---

[2]    It is, perhaps, worth noting that the Superior Court, in concluding Mr. Sullivan's conduct did not constitute ineffective assistance of counsel also concluded that the outcome of Mr. Johnson's *trial* would not have been different absent the issues related to the perceived conflict of interest and failure to raise the alleged *Brady* violations. In other words, even had Blitzer prevailed on the motion for new trial, which the court concluded he could not have done based on Johnson's proposed arguments, the outcome of the trial on remand would have been identical. Under those circumstances, Johnson can demonstrate no causal link between any alleged negligence on Mr. Blitzer's part and the unfavorable result of his criminal trial.

> the merits; (3) after a full and fair opportunity for litigation by the
> parties or their privies; (4) under circumstances where the
> determination was essential to the judgment and not merely
> dictum.

*Davis v. Davis*, 663 A.2d 499, 501 (D.C. 1995).  So long as the Superior Court's ruling that Mr.

Sullivan's actions did not constitute ineffective assistance of counsel meets these criteria, Mr.

Johnson cannot relitigate the issue in this Court.

As a threshold issue, there is no question that the omissions of counsel which Mr.

Johnson now presents in his Complaint as constituting professional negligence are the same

omissions considered by the Superior Court in the post-conviction proceedings. *See* Exhibit 1.

As shown above, in both the post-conviction proceedings and the Complaint, Mr. Johnson points

to Mr. Sullivan's conflict of interest because of his prior representation of Mr. Williams, Mr.

Sullivan's failure to call two witnesses that would inculpate Mr. Williams, and the alleged *Brady*

violations concerning the government's withholding of information related to Mr. Williams.

Nor is there any question that the issue of whether these omissions would have resulted in

a different outcome in the criminal matter was actually litigated by the Superior Court.  That

court's opinion makes clear that both Mr. Johnson and the government raised and provided

briefing on that issue.  *See* Exhibit 1.  Similarly, the opinion from the Superior Court makes clear

that Mr. Johnson had a full and fair opportunity to litigate the issue of Mr. Sullivan's alleged

negligent omissions during the course of Johnson's criminal trial and post-conviction relief

proceedings.  *Id*. at 32 – 33.  The opinion makes clear that this was Johnson's fourth collateral

attack on his conviction – the issue of Sullivan's conflict and other alleged failures could have

been raised in any of these proceedings.  The trial court also considered, at length, whether oral

arguments would be necessary, but concluded they were not because the record had been

sufficiently established.  *Id*.  The case did not present competing affidavits, and facts outside the

existing record were not necessary to rule on Mr. Johnson's claims. *Id*. The record is also clear that the Superior Court's judgment was final, and the court had proper authority to issue judgment.

The only question that remains is whether the judgment of the Superior Court that the outcome of Mr. Johnson's trial would not have been affected had Mr. Sullivan proceeded as Johnson suggests he should have was "necessary to the judgment." As the opinion makes clear, there were two alternative and independent grounds for the court's denial of Mr. Johnson's fourth post-conviction petition. One ground was that Mr. Johnson was procedurally barred for various reasons from raising the claims for relief he was advancing in his petition. *See* Exhibit 1. The other ground, was that Mr. Johnson's claims for relief based on ineffective assistance of counsel were, on the merits, baseless for the reasons discussed above. Either ground, standing alone, would have been sufficient to support the denial of Mr. Johnson's petition, meaning that the court's ruling on whether the outcome of Mr. Johnson's trial would have been different may not technically be "necessary" to the judgment.

The traditional rule, however, is that independently sufficient alternative findings will be given preclusive effect for collateral estoppel purposes, so long as the alternative grounds have been fully litigated and decided. *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc*., 458 F.3d 244, 248-256 (3d Cir. 2006). In this case, the question of whether the outcome of Mr. Johnson's trial would have been different had Mr. Sullivan performed as Mr. Johnson alleges he should have was fully litigated and decided. The Superior Court concluded the outcome would not have been altered. This decision, standing alone and independent of the procedural grounds also relied upon by the Superior Court, was sufficient to deny Mr. Johnson's request for post-conviction relief on the basis of ineffective assistance of counsel. Consequently, there is no

reason not to give preclusive effect to the Superior Court's finding, even though the court also set forth an alternative ground to deny relief.

Here, the collateral estoppel doctrine prevents Mr. Johnson from relitigating the issue of whether the outcome of his trial would have been different had Mr. Sullivan not labored under the alleged conflict of interest and had he pursued the government's alleged *Brady* violations. The Superior Court held that, even if Mr. Sullivan had proceeded as Mr. Johnson now contends he should have, the outcome of his trial would have been no different. Mr. Johnson is bound by this determination. Because a necessary element of the claims Mr. Johnson has alleged against Mr. Blitzer is that, but for his negligence, Mr. Johnson would have succeeded in the criminal matter, Mr. Johnson can allege no set of facts which would allow him to successfully state a claim. Mr. Johnson claims that Mr. Blitzer should have raised the additional issues in his post-conviction motion for a new trial. But, the Superior Court has already concluded that these issues did not impact the outcome of Mr. Johnson's trial or constitute ineffective assistance of counsel by Mr. Sullivan. Consequently, even had Mr. Blitzer raised these issues in his motion, the outcome would have been no different. The motion would have been denied and Mr. Johnson cannot show that any alleged negligence on the part of Mr. Blitzer is the cause in fact of the denial of that motion.

## II.  JOHNSON'S COMPLAINT FAILS TO ALLEGE FACTS THAT RAISE HIS CLAIM FOR RELIEF ABOVE A SPECULATIVE LEVEL

The Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the … claim is and the grounds upon which it rests." Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Although the Rule does not require a plaintiff to provide detailed factual allegations to survive a motion to dismiss, the plaintiff must

11

provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  To survive a motion to dismiss, then, the factual allegations in a complaint must be "enough to raise a right to relief above the speculative level," and "the pleading must contain something more … than … a statement of facts that merely creates a suspicion of a legally cognizable right of action' on the assumption that all the allegations in to complaint are true (even if doubtful in fact)." *Id*.  For this reason, to survive a motion to dismiss, a complaint must set forth facts which, if taken as true, set forth a right to recovery that is "plausible."  *Id*. at 556.

Under District of Columbia law, a litigant who wishes to set forth a good faith clam for professional malpractice must, before filing the lawsuit, consult with an appropriate professional to determine whether the standard of care has been breached.  *Apperson, et al. v. Greater Southeast Community Hospital Co., et al*., No. 10194-88, Slip Op. (D.C. Sup. May 9, 1990)(attorney who filed complaint for medical malpractice sanctioned under Rule 11 for failure to consult with a medical professional prior to filing suit).  Although *Apperson* involved a claim for medical malpractice, its reasoning is equally applicable to claims of attorney malpractice which must also be established by expert testimony, unless patently obvious.  *O'Neil v. Bergan*, 452 A.2d 337, 342 (D.C. 1982).

The reason for this rule is that a layman cannot decide on his own knowledge whether a professional has breached the standard of care expected of other professionals.  *Apperson, supra*. At trial, establishing a breach of a professional standard of care requires testimony of a qualified expert, but all that is required prior to filing suit is that a litigant consult a knowledgeable expert to determine whether a claim for breach of the standard of care is well founded on the facts alleged.  *Id.*

In this case, Mr. Johnson is not an attorney, nor does his complaint allege that he has legal training sufficient for him to make a determination regarding whether Mr. Blitzer breached an applicable standard of care.  Nor does Mr. Johnson's complaint reveal that he consulted with an attorney prior to filing his complaint to determine if his claim for professional malpractice was well founded.  Because Mr. Johnson failed to consult with the required expert prior to filing suit, his claims that Mr. Blitzer violated the applicable standard of care when he failed to present certain legal theories in his motion for a new trial is entirely speculative.[3]

Mr. Johnson, as a layman, can have no good faith way of determining whether the alleged omission of such theories presents a legitimate claim for malpractice. On the face of the complaint, and taking as true that the arguments in question were omitted from the motion for new trial, there is no way to determine whether the arguments were omitted because of a breach of the standard of care or for another reason consistent with the appropriate exercise of professional judgment.  Without a pre-filing consultation of an attorney, Mr. Johnson's claim that the omission of arguments from Mr. Blitzer's motion for new trial constituted a breach of the standard of care is entirely speculative.  Consequently, Mr. Johnson's complaint fails to set forth a claim for relief that is "plausible" and dismissal is appropriate.

---

[3]     In most cases where the plaintiff presents a claim for legal malpractice, the retention of an attorney to evaluate and file the claim is likely sufficient to meet the requirement that plaintiff's consult with an expert to determine if there is a good faith argument the defendant breached the standard of care.  Here, Mr. Johnson is not represented by counsel and has chosen to proceed *pro se*.  This is not to say, however, that *pro se* litigants must retain counsel or cannot proceed on their own in malpractice cases.  All that is required is consultation with an attorney prior to filing in order to determine whether the claim for legal malpractice is well founded.  After such a consultation, a *pro se* litigant remains entitled to proceed without the assistance of counsel if they so chose.

### CONCLUSION

For the foregoing reasons, Defendant Abraham Blitzer respectfully requests that the

Court dismiss, with prejudice, Plaintiff's claims against him for failure to state a claim upon

which relief can be granted.

December 27, 2009                                              Respectfully submitted,

                                                              JORDAN, COYNE & SAVITS, LLP


                                            By:        /s/ John Tremain May
                                                   John Tremain May (Bar No.: 294199)
                                                   1100 Connecticut Avenue, N.W.
                                                   Suite 600
                                                   Washington, DC 20036
                                                   Telephone: 202.296.4747
                                                   Facsimile:  202.496.2800

                                                   *Counsel for Defendant Abraham Blitzer*

## EXHIBIT 1

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**Criminal Division – Felony Branch**

2008 AUG 19 P 3:

UNITED STATES OF AMERICA     :

       v.                   :

DUANE JOHNSON,          :
     Defendant.            :

Case No.: F-4606-04
Judge Russell F. Canan
Closed Case

### ORDER

This matter is before the Court on defendant's Corrected Memorandum in Support of Motion to Vacate, Set Aside, or Correct Sentence ("Defendant's Motion") filed March 13, 2006, defendant's Motion to Supplement Motion to Vacate, Set Aside, or Correct Sentence ("Defendant's Supplement I") filed March 14, 2007, Government's Opposition to Defendant's *Pro Se* Corrected Memorandum in Support of Motion to Vacate, Set Aside, or Correct Sentence ("Government's Opposition I") filed July 13, 2007, defendant's Reply to the Government's Opposition ("Defendant's Reply") filed July 26, 2007, defendant's Motion for a New Trial ("Defendant's Supplement II") received in chambers on December 10, 2007, and Government's Opposition to Defendant's Motion for a New Trial and Motion to Amend Motion for a New Trial ("Government's Opposition II") filed June 24, 2008, and Supplement to Government's Opposition to Defendant's Motion for a New Trial and Motion to Amend Motion for a New Trial, filed July 25, 2008, ("Government's Supplement"). Upon review of the record, the Court concludes that defendant's motion shall be denied.

### I.  Procedural History

#### A.    Trial and Sentencing

On January 19, 1995, after a jury trial before Judge Colleen Kollar-Kotelly, defendant was found guilty of first degree felony murder while armed, second degree murder while armed, assault with intent to kill while armed ("AWIKWA"), assault with a deadly weapon ("ADW"), attempt to commit robbery while armed, possession of a firearm during a crime of violence ("PFCV"), and carrying a pistol without a license ("CPWL").[1]

On March 15, 1995, the Court sentenced defendant as follows:  thirty years to life incarceration for first degree felony murder while armed; fifteen years to life incarceration for second degree murder while armed; fifteen to forty-five years incarceration for AWIKWA; one to three years incarceration for ADW; ten to thirty years incarceration for attempt to commit robbery while armed; five to fifteen years incarceration for PFCV; and one year incarceration for CPWL.  The sentences for attempt to commit robbery while armed (ten to thirty years) and for second degree murder while armed (fifteen years to life) are to run concurrent to the sentence for first degree felony murder while armed (thirty years to life).  The sentence for CPWL (one year) is to run concurrent to the sentence for PFCV (five to fifteen years).  All other sentences run consecutively.

Defendant noted a timely appeal claiming there was insufficient evidence and that the trial court erred in not giving a jury instruction that

---

[1]  Pursuant to Administrative Order No. 97-28 of December 3, 1997, all criminal matters in adjudicated cases which would be referred back to Judge Colleen Kollar-Kotelly have been certified to Judge Russell F. Canan for all purposes.

2

manslaughter was a lesser included offense of felony murder.  On June 25,

1996, the Court of Appeals found there was sufficient evidence and no error

in refusing to instruct on a manslaughter lesser included offense, affirming

defendant's convictions.  *Johnson v. United States*, No. 95-CF-364 (D.C.

June 25, 1996).  The Court of Appeals remanded only because defendant's

murder convictions merged and because the felony murder and underlying

felony convictions merged.  *Johnson v. United States*, No. 950CF-364 (D.C.

June 25, 1996).  In accordance with the remand, Judge Kollar-Kotelly

vacated the attempt to commit robbery while armed and the second degree

murder while armed convictions.

Defendant filed a motion to reduce sentence under Rule 35(b), and

on October 2, 1996, Judge Kollar-Kotelly denied it on the grounds that

defendant had not presented any new facts.

Defendant filed a petition for rehearing or rehearing *en banc*, which

was denied by the Court of Appeals on October 30, 1996.

### B.    The Court Denied Defendant's First § 23-110 Motion After an Evidentiary Hearing.

Defendant submitted two similar §23-110 motions based on

ineffective assistance of counsel, one received in chambers on February 11,

1998, and one on February 17, 1998.  On March 6, 1998, this Court

appointed attorney Abraham Blitzer, Esq. to represent defendant on his

post-conviction motion.

On October 1, 1998, defendant filed a Motion for a New Trial

pursuant to D.C. Code § 23-110.  In his motion, defendant alleged that trial

3

counsel, then attorney Frederick Sullivan, Esq., now a Magistrate Judge, provided ineffective assistance of counsel because (1) he did not adequately prepare defendant to testify in light of the physical evidence, (2) he did not offer into evidence a prior conviction of the decedent, and (3) he did not adequately cross-examine an eyewitness. On February 1, 1999, the government filed its opposition in which it argued that trial counsel sufficiently prepared defendant to testify, that the decision not to use the decedent's conviction was tactical, and the cross-examination was adequate. The Court held an evidentiary hearing on the motion where defendant and Judge Sullivan testified, at the conclusion of which, on June 29, 1999, the Court denied defendant's motion from the bench.

On July 28, 1999, defendant appealed the denial, and on August 17, 2001, the Court of Appeals affirmed, finding that trial counsel's performance was not ineffective. *Johnson v. United States*, No. 99-CO-978 (D.C. August 17, 2001). On November 21, 2001, upon consideration of defendant's petitions for rehearing or rehearing *en banc*, the Court of Appeals denied both petitions.

### C.   Defendant Withdrew His Second § 23-110 Motion and the Court Denied It Without Prejudice

On April 9, 2002, defendant filed *pro se* his second § 23-110 motion alleging as error the trial court's instruction that a finding by the jury that defendant was the aggressor precluded a finding that he acted in self-defense. The government responded on July 29, 2002, arguing that defendant's claim was procedurally barred.

4

On July 23, 2002, the Court received a *pro se* letter that it construed as a motion to withdraw the Motion to Vacate Sentence Pursuant to D.C. Code Section 23-110, or in the alternative, to deny without prejudice. On August 20, 2002, the Court granted defendant's motion to withdraw and denied defendant's second § 23-110 motion without prejudice.

### D. Defendant Filed Assorted Other Pleadings, including his Third § 23-110 Motion, All of Which Were Denied by the Court.

On September 8, 2003, the Court received defendant's *pro se* Motion for Appointment of Counsel, which it denied on October 31, 2003. On April 19, 2005, defendant again filed a *pro se* letter which the Court construed as a Motion for Appointment of Counsel, and on August 28, 2005, the Court denied it because there is no constitutional requirement that counsel be appointed for post-conviction proceedings, and defendant had not set forth sufficient grounds warranting such an appointment.

On February 21, 2006, defendant appealed the Court's August 28, 2005, order. On April 10, 2006, the Court of Appeals ordered defendant to show cause why his appeal filed on February 21, 2006, should not be dismissed for lack of jurisdiction because it was not timely filed. Defendant did not file a response. The Court of Appeals dismissed defendant's appeal on May 18, 2006. On June 12, 2006, the mandate issued.

On May 22, 2007, defendant filed a motion to recall the mandate which the Court of Appeals denied on June 6, 2007. On August 30, 2007, however, the Court of Appeals vacated its June 6, 2007, order; granted what

5

it construed as a Motion for Reconsideration; and denied defendant's motion to recall the mandate "without prejudice to the trial court's consideration of the alleged conflict of interest of appellant's trial counsel (who was also appellate counsel) pursuant to a D.C. Code § 23-110 motion." *Johnson v. United States*, Order, No. 95-CF-364 (August 30, 2007).

While this litigation was proceeding, defendant filed his third § 23-110 motion on December 1, 2005, captioned as a Motion to Reopen § 23-110 Proceedings/Amend Motion for New Trial.  Defendant's third § 23-110 motion alleged that he was precluded from raising in his first § 23-110 motion the claim that trial counsel's promise during opening statement to call two witnesses to corroborate defendant's version of events induced defendant to plead not guilty rather than enter an Alford plea and that trial counsel's subsequent failure to call those witnesses constituted ineffectiveness of counsel.  On February 15, 2006, defendant filed a Memorandum in Support of Motion to Commence Discovery in which he submitted interrogatories and requests for admission to the United States and Assistant United States Attorney ("AUSA") Steven McCool.  On March 13, 2006, defendant filed an Independent Action claiming that defendants, the United States of America, and Steven McCool, breached their duty under an agreement by violating defendant's rights under the Fifth and Sixth Amendments of the Constitution "by encouraging its witnesses to commit perjury, suppress evidence, misrepresent facts, and execute a deliberate

plot which was created to improperly and unlawfully influence the trial Judge's decision." Independent Action at 6.

On May 30, 2006, defendant filed a Motion for Bond/Release Pending Appeal, which was denied by this Court on May 30, 2007.

On May 8, 2007, the Court denied defendant's (1) Motion to Reopen § 23-110 Proceedings/Amend Motion for New Trial; (2) Memorandum in Support of Motion to Commence Discovery; and (3) Independent Action. Defendant did not note an appeal from this order.

In the same May 8, 2007, order, the Court held defendant's Corrected Memorandum in Support of Motion to Vacate, Set Aside or Correct Sentence, filed March 13, 2006, in abeyance awaiting a government response.

### E.   Defendant's Fourth § 23-110 Motion

On February 15, 2006, defendant filed a Memorandum in Support of Motion to Vacate, Set Aside, or Correct Sentence, and on March 13, 2006, defendant filed a Corrected Memorandum in Support of Motion to Vacate, Set Aside, or Correct Sentence ("Defendant's Motion"). On March 14, 2007, defendant filed a Motion to Supplement Motion to Vacate, Set Aside, or Correct Sentence ("Defendant's Supplement I") and a Praecipe. On April 23, 2007, defendant filed a letter which the Court construed as adding a conflict of interest claim to defendant's motion. On April 30, 2007, defendant filed a Notice further describing this conflict of interest claim. Attorney Joseph Bernard entered his appearance by praecipe on November 15,

7

2007.  Defendant through counsel filed a Motion for a New Trial ("Defendant's Supplement II"), received in chambers on December 10, 2007, which supplemented defendant's *pro se* pleadings with attachments.  On April 29, 2008, Bernard moved to withdraw his appearance.

Defendant's motion raises three claims.  First, defendant alleges that his appointed counsel for his first § 23-110 motion, Abraham Blitzer, Esq., provided ineffective assistance of counsel by failing to raise in that motion the claim that trial counsel's promise to introduce two witnesses on behalf of defendant induced defendant to plead not guilty rather than enter an *Alford* plea.  Defendant's Motion at 31-32.  This claim, which defendant subsequently raised in his third § 23-110 Motion, filed December 1, 2005, was denied by this Court as procedurally barred on May 8, 2007.  Government's Opposition II, Appendix C.

Second, defendant contends that his attorney during trial and his first appeal, Magistrate Judge Frederick Sullivan, provided ineffective assistance of counsel due to a conflict of interest stemming from trial counsel's prior representation of a government witness, Victor Williams.  Defendant alleges that trial counsel's prior representation of Mr. Williams prevented him from (1) investigating and pursuing the defense theory that Victor Williams was the shooter; (2) impeaching Mr. Williams with his prior convictions for unlawful entry and theft in the second degree; (3) introducing testimony from any other victims of violence committed by Mr. Williams, and (4) advising

8

defendant of his right to note an appeal from his resentencing upon remand. Defendant's Supplement II at 6; Defendant's Reply at 5.

Finally, defendant claims that he is entitled to a new trial pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), alleging that the government failed to disclose Mr. Williams' 1994 arrest as well as evidence that Mr. Williams had his own gun in his possession prior to trial, which defendant contends to be exculpatory or favorable evidence. Defendant's Motion at 11-17.

The government argues that the Court should summarily reject defendant's claim of ineffective assistance of post-trial counsel because defendant has no constitutional or statutory right to effective assistance of counsel for a § 23-110 motion filed *after* the conclusion of his direct appeal. Government's Opposition I at 13. With regard to the ineffective assistance of trial counsel claim, the government argued in its first response that the claim is procedurally barred as a successive motion under § 23-110(e). Government's Opposition I at 9-11. In its second response, the government argues in the alternative that defendant's claim has no merit because trial counsel did not recall his prior representation of Mr. Williams, did not alter his representation of defendant in any way, or make any decisions because of this prior representation. Government's Opposition II at 2.

Finally, the government asserts that defendant's *Brady* claims are procedurally barred because they were available during the pendency of defendant's direct appeal and during his first § 23-110 motion, and defendant has failed to show cause and prejudice as to his failure to raise

HUNTERB 08/19/2008 6:41:52 PM

them at an earlier time. Government's Opposition I at 14-15. The government argues in the alternative that disclosure of the alleged *Brady* evidence would not have been admissible at trial, and admission at trial would not have produced a different verdict. Government's Opposition II at 22, 24.

## II. Factual Background

### A.   Evidence of the Crimes

The evidence at trial demonstrated that during the evening of April 25, 1994, defendant was in a car with five other people, Victor Williams, Keith Nash, Sharon Nash, Latina Gray, and Damitra Rowel when after a botched attempted robbery, defendant shot and killed Keith Nash.  Mr. Nash was the driver, his sister, Ms. Nash, sat in the front passenger seat, the defendant sat behind the driver's seat, Mr. Williams sat behind the passenger, and Ms. Gary and Ms. Rowel sat in the middle of the back seat.  Government's Opposition II at 6.

The government's theory of the case was that after defendant refused to discount his drugs and the car's occupants bought from a different dealer, defendant entered the car with the intent of robbing the decedent, Mr. Nash, and his companions.  Ms. Rowell testified for the government that she and the defendant approached Mr. Nash and asked for a ride.  Government's Opposition II at 6.  Once inside the car, defendant ordered Mr. Nash to drive into an alley, cut the ignition, and give him money.  Government's Opposition II at 6-7.  Mr. Nash replied that he had no money, and Ms. Nash

10

attempted to pass a gun and a bag of bullets to Mr. Nash. Government's Opposition II at 7. Defendant shot Mr. Nash, fired again – injuring Ms. Nash – and struggled with Mr. Williams over the gun before fleeing with the gun down the alley. Government's Opposition II at 7. As defendant ran away, Mr. Williams fired at him twice with the gun he had taken from Mr. Nash's hand. Government's Opposition I at 6.

The defense theory was that defendant approached the car in response to a request from Mr. Williams, that it was Mr. Williams who directed the car into the alley, and for the headlights to be turned off, and who then pointed a gun at defendant and demanded his drugs and money. According to defendant, he and Mr. Williams struggled over the gun and shots went off during the struggle before defendant was able to free himself from the car and run away. Mr. Williams shot after defendant as he ran down the alley. Defendant's Supplement I at 8. Defendant was the only witness for the defense. Defendant admitted that he had been selling drugs around the time of the shooting.

### B.   Evidence Relating to Defendant's Post-Conviction Claims

Defendant's claim of ineffective assistance of counsel due to a conflict of interest stems from a prior representation of Mr. Williams by defendant's trial counsel, who had been appointed to represent Mr. Williams on charges of First Degree Burglary While Armed and Armed Robbery. Defendant's Supplement II, Exhibit A, Copy of Criminal Case Jacket. Mr. Williams' case arose out of an incident on or about November 17, 1985.

11

Complainants reported to the police that three individuals, including the subject later identified as Mr. Williams, entered complainants' apartment with one of the other suspects displaying a handgun. Government's Opposition II, Appendix D, Affidavit in Support of an Arrest Warrant. Upon Mr. Williams' demand that the complainant give him $50.00, the complainant gave him the $14.00 he had in his pocket, whereupon all three suspects fled. Government's Opposition II, Appendix D, Affidavit in Support of an Arrest warrant. Mr. Williams and another suspect named Artie Simpson were ultimately arrested and indicted on charges of First Degree Burglary While Armed and Armed Robbery. Government's Opposition II, Appendix D. Mr. Williams entered guilty pleas to the charges of Unlawful Entry and Theft II, and was sentenced on February 27, 1987, to 180 days incarceration on both counts, to be served consecutively. Government's Opposition II, Appendix D, Judgment and Commitment/Probation Order.

Mr. Williams also had a case that was filed on July 19, 1994, and arose out of a police report of a "robbery snatch" perpetrated by a suspect matching Mr. Williams' description, who then immediately fled the scene. Government's Opposition II, Appendix I. After a positive identification by the victim, Mr. Williams was arrested for Robbery and Receiving Stolen Property. The charges were no papered on July 19, 1994, and the court's electronic records indicate that no attorney was appointed.

III. **Analysis**

    A.    **Defendant's Claim of Ineffective Assistance of Post-Conviction Counsel Has No Legal Basis for Relief.**

HUNTERB 08/19/2008 6:41:52 PM

Defendant filed his first § 23-110 motion on October 1, 1998, over two years after the Court of Appeals affirmed his conviction. The Court appointed counsel for defendant for this first § 23-110 motion. Defendant now – for the second time in a collateral attack – claims that if his post-trial counsel had "exercised due diligence, he would have uncovered relevant facts that would have demonstrated that trial counsel did in fact promise Mr. Johnson that he would have called two witnesses to support his testimony." Defendant's Reply at 3. Defendant further contends that had post-trial counsel brought this claim in the original § 23-110 proceeding, the outcome would have been substantially different. Defendant's Reply at 4.

The Court denied this claim as procedurally barred when defendant first raised this claim in his third § 23-110 motion, and the claim is still procedurally barred now. As the Court noted in its May 8, 2007, order, this claim, "could have been raised at the first § 23-110," and "[t]he fact that counsel at the first § 23-110 did not procure the transcript does not constitute cause." *United States v. Johnson*, No. F-4696-94, 2 (D.C. Super. Ct. May 8, 2007). The Court of Appeals, in rejecting this claim, stated, "[t]hough the two witnesses were never called to the stand, their testimony would have been duplicative of the testimony of Rowel, Williams, and Gary. It was not unreasonable, therefore, for counsel to decide not to call the two witnesses during trial." *Johnson v. United States*, No. 99-CO-978, slip op. at 4 (D.C. August 17, 2001).

13

Even assuming the Court could hear defendant's claim, defendant cannot obtain any relief because there is no constitutional right to effective assistance of counsel on post-conviction matters and even if there were a statutory right, counsel's representation of defendant for his first § 23-110 did not constitute *Srickland v. Washington* ineffectiveness. 466 U.S. 668 (1984).

Generally, a defendant has the constitutional right to effective assistance of counsel through post-trial proceedings *during* the pendency of his first appeal. *McCrimmon v. United States*, 853 A.2d 153, 159-60 (D.C. 2004). This duty has not, however, been extended to proceedings filed after the conclusion of the direct appeal, nor does there exist an unqualified statutory right to counsel for post-conviction matters. *Doe v. United States*, 583 A.2d 670, 673 (D.C. 1990). As such, as a matter of law, defendant's claims must be rejected.

Even assuming that defendant had the right to bring a claim of ineffective assistance of post-trial counsel after the conclusion of his direct appeal, the claim has no merit. The Supreme Court announced in *Strickland v. Washington*, 466 U.S. 668 (1984), a two-part test to determine the merits of a claim for ineffective assistance of counsel. First, the defendant must show that counsel's performance was deficient. *Strickland*, 466 U.S. at 687. This requires a showing that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Second,

14

the defendant must show that the defense was prejudiced by counsel's deficiency, that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. Defendant must also show there was a reasonable possibility that, but for counsel's error, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 695-96.

Defendant has failed to show that post-trial counsel's representation was deficient or prejudicial. As the Court of Appeals noted, the testimony of the witnesses who defendant claims were never called would merely have been duplicative of testimony given by other witnesses. *Johnson v. United States*, No. 99-CO-978, slip op. at 4 (D.C. August 17, 2001). Defendant has not shown that the representation of post-trial counsel was deficient or prejudicial, and therefore this claim has no merit.

B.   **Defendant's Claim of Ineffective Assistance of Trial Counsel due to a Conflict of Interest is a Successive Motion, Or, in the Alternative, It is Procedurally Barred as a Second Motion.**

In its first opposition, the government asserted that defendant's ineffective assistance of counsel claim is procedurally barred as a "successive motion" under D.C. Code § 23-110(e), which provides that a court "shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner." The instant claim of ineffective assistance of trial counsel is barred under § 23-110(e) because it raises an identical claim of ineffective assistance of counsel. It is true that the theory defendant now alleges – conflict of interest – is different than the theory he

15

relied on earlier in his first § 23-110 motion, but the claim of ineffective assistance of counsel is identical. The Court of Appeals has affirmed the denial of a second § 23-110 motion as successive in a similar situation, noting, "all the claims he raised in his first motion, including ineffective assistance of counsel, cannot be raised again in a second (or third or fourth) motion." *Bradley v. United States*, 881 A.2d 640, 645 (D.C. 2005). The *Bradley* Court continued, "Only the factual allegations in the second motion are new; the legal claim in the second, ineffective assistance, is the same as in the first." *Bradley*, 881 A.2d at 645. The *Bradley* Court noted, "[w]ithout a showing of cause and prejudice, appellant is entitled to no more than one bite at the ineffective assistance apple." *Bradley*, 881 A.2d at 645.[2]

In the alternative, defendant's motion is procedurally barred as an abuse of the writ. *See Bradley*, 881 A.2d at 645; *Dobson v. United States*, 815 A.2d 748 (D.C. 2003); *Minor v. United States*, 647 A.2d 770, 776 (D.C. 1994); *Vaughn v. United States*, 600 A.2d 96, 97 (1991).

D.C. Code § 23-110 is not intended to serve as a substitute for direct review. *Head v. United States*, 489 A.2d 450, 451 (D.C. 1985) (citing *Fields v. United States*, 466 A.2d 822, 827 (D.C. 1983)). A defendant who fails to

---

[2] The Court notes that *Bradley* and *McCrimmon v. United States*, 853 A.2d 154 (D.C. 2004) are seemingly inconsistent. The *McCrimmon* Court stated, "This case raises the issue of first appellate counsel's deficient conduct in failing to raise the conflicts issue in the first § 23-110 motion." *McCrimmon*, 853 A.2d at 160. The Court notes that *McCrimmon* is distinguishable from *Bradley* because in *McCrimmon* the second motion was filed during the pendency of the direct appeal whereas for *Bradley* and defendant, the direct appeal had long concluded when the second motion was filed. Other federal courts have followed the *Bradley* "one bite" rule. *See Williams v. Calderon*, 83 F.3d 281, 286 (9th Cir. 1996) (holding a second ineffective assistance claim successive because "'[a] different factual basis or argument asserted to support he same legal theory advanced previously does not constitute a new ground for relief and is successive.'").

HUNTERB 08/19/2008 3:41:52 PM

raise an available claim on direct appeal or in a prior collateral attack "may not raise that issue on collateral attack unless he can show cause for his failure to do so and prejudice as a result of his failure." *Wu v. United States*, 798 A.2d 1083, 1091 (D.C. 2002).

Collateral attack relief is only appropriate where there existed serious defects in the trial that were not correctable on direct appeal or where defendant was prevented by exceptional circumstances from previously raising on direct appeal. *Head*, 489 A.2d at 451 (citing *Atkinson v. United States*, 366 A.2d 450, 452 (D.C. 1976)). In order to show cause for his failure to raise the claim during the pendency of his direct appeal, defendant must show "exceptional circumstances." *Washington v. United States*, 834 A.2d 899, 903 (D.C. 2003) (citations omitted). The defendant must prove that some "objective cause external to the defense impeded [his] efforts" to raise his claim during the pendency of his direct appeal. *Washington*, 834 A.2d at 903.

If cause can be shown, the defendant must then demonstrate "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Washington v. United States*, 834 A.2d 899, 903 (D.C. 2003) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)) (emphasis original). The prejudicial effect of the error must be of such degree that the result of the proceeding would have been

17

different but for the error. *Shepard v. United States*, 533 A.2d 1278, 1282 (D.C. 1987).

Defendant cannot show cause for his failure to raise his claim of ineffective counsel in a timely manner. Though defendant's trial counsel also served as defendant's counsel on appeal, defendant had new counsel for his first § 23-110 motion. Defendant further claims that he only discovered the fact of trial counsel's prior representation of Mr. Williams on February 13, 2007, which he contends would constitute cause for his failure to raise the claim in his first § 23-110 motion. Defendant's claim is belied by the court records of Victor Williams' arrests attached as Exhibit C to his March 13, 2006, Corrected Memorandum in Support of his Motion to Vacate, Set Aside, or Correct Sentence. The court records indicate Mr. Williams' history of criminal cases in D.C. Superior Court, and though the records defendant attached do not show the details of the case, specifically, the appointed counsel, defendant's ability to get these records make it clear that he could have obtained the name of appointed counsel as well. Indeed, the Court takes judicial notice that the criminal records of the Superior Court are available to the public and appointed counsel's name is always a part of that record. Defendant acknowledges that these records are publicly available since he had an attorney "John P. Fatherree assist..[him] with . obtaining the" records. Even if defendant's claim were true that he did not actually find out about trial counsel's prior representation of Mr. Williams, there was nothing external to the defense preventing defendant from

HUNTERIS 06/19/2008 04:52 PM

obtaining this information.  Moreover, the court records defendant submitted in support of his motion were available to defendant's appointed counsel for his first § 23-110 motion.

In addition to not demonstrating cause, defendant also has failed to establish how he suffered prejudice as a result of his failure to raise these claims in a prior proceeding.  Defendant alleges that trial counsel, as a result of his previous representation of Mr. Williams, was precluded by a conflict of interest from (1) investigating and pursuing the defense theory that Victor Williams was the shooter; (2) impeaching Mr. Williams with his prior convictions for unlawful entry and theft in the second degree; (3) introducing testimony from any other victims of violence committed by Mr. Williams in order to establish Mr. Williams was the aggressor, and (4) advising defendant of his right to note an appeal from his resentencing upon remand Defendant's Supplement II at 6; Defendant's Reply at 5.

Though defendant has submitted two of his own affidavits, he has not submitted either affidavits or credible proffers from witnesses to support the putative actions trial counsel should have taken as to (1) the theory that Mr. Williams was the shooter and (3) the introduction of evidence about Mr. Williams' prior violent acts.[3]  Affidavits or credible proffers of witnesses are

---

[3] Defendant attaches one of his own affidavits to Defendant's Motion and to Defendant's Supplement I.  The affidavit attached to Defendant's Motion states that he makes the affidavit on personal knowledge, is competent and of majority age; that his trial counsel and government counsel "entered into a pretrial discovery agreement...which was governed by the applicable articles of the uniform commercial code"; the prosecutor withheld *Brady* evidence; trial counsel told defendant "he presented to government counsel a Rosser letter"; "Attorney John P. Fatheree assisted" defendant in getting the attached court records; trial counsel told him before trial that two witnesses with testimony consistent with defendant's testimony would be called; trial counsel told him before trial evidence would be

19

required when a defendant claims ineffective assistance of counsel for failure to call a witness. *Ready v. United States,* 620 A.2d 233, 235 (D.C. 1993).

As to defendant's claim in (2), that trial counsel did not impeach Mr. Williams with his prior convictions, defendant can neither allege nor demonstrate prejudice because Mr. Williams was impeached with these convictions during his direct examination by the government.

Finally, as to trial counsel's failure to advise defendant of his right to appeal after resentencing, defendant cannot show prejudice for failing to raise this issue, either. While a defendant regains his right to direct appeal when he is resentenced after remand, to preserve that right notice of appeal must be filed thirty days after resentencing. R. of the District of Columbia Court of Appeals, R. 4(b)(1). Defendant failed to note a timely appeal. Though defendant had a right to appeal after resentencing, such an appeal is limited to "allegations pertinent to the resentencing." *Edwards v. United States,* 256 F.2d 885, 886 (D.C. Cir. 1958); *M.A.P. v. Ryan,* 285 A.2d 310

introduced "that Keith Nash assaulted" defendant; defendant would have entered an Alford plea if trial counsel had not told him about the two witnesses or about the Keith Nash assault evidence; trial counsel was also appellate counsel and did not do his duties; trial defendant told post-conviction counsel about trial counsel's failure to fulfill promises; trial counsel did not advise defendant about his right to file an appeal after resentencing even though he had a duty to advise; defendant "learned of the Amended Judgment and Commitment order when deputy clerk Robin Holmes provided the undersigned with a copy of a docket report...in 2004"; post-conviction counsel did not order the transcripts of opening statements; defendant did not receive the Court's August 3, 1996, order until August 28, 2005. Defendant's Motion, Exhibit A. Defendant attached a declaration to Defendant's Supplement I which states that he makes the affidavit on personal knowledge. Defendant's Supplement I which states that he makes the affidavit on personal knowledge. is competent and of majority age; that he "discovered for the first time that Mr. Sullivan represented Victor Williams" on February 13, 2007; that trial counsel did not advise him "about the prejudice that could result from Mr. sullivan [sic] representing me after previously representing Mr. Wiliams"; and he did not know about the conflict of interest, and had he known he "would not have consented to Mr. Sullivan's representation." Defendant's Supplement I, Exhibit F.

20

(D.C.1971). The sole purpose upon remand was to merge the murder convictions and predicate felony and felony murder convictions, so defendant would not have had an opportunity to raise any of these claims on appeal because they were not relevant to the resentencing. Defendant makes no claims that the resentencing was in any way contrary to law.

     C.    **Even Assuming *Arguendo* that Defendant's Ineffective Assistance of Counsel Claim is Not Procedurally Barred, it is Meritless.**

In *Strickland*, the Supreme Court articulated the standards ordinarily applicable to claims of ineffective assistance of counsel, requiring defendants to show both inadequate performance and prejudice. The Supreme Court has further refined the standard necessary when a defendant claims ineffective assistance of counsel based on a conflict of interest, stating, "a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief," and the Court went on to emphasize that, "until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." *Cuyler v. Sullivan*, 446 U.S. 335, 349-50 (1980); *see also Derrington v. United States*, 681 A.2d 1125, 1133 (D.C. 1996) (noting that "[a] claim of ineffective assistance of counsel based on an attorney's conflict of interest, however, is evaluated pursuant to a less stringent standard than is a conventional *Strickland* claim").

21

Even where a defendant fails to object during trial, his claim may succeed "if a convicted defendant demonstrates on appeal that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler*, 446 U.S. at 348, 350. "Conflicts of interest can arise both in cases of simultaneous and successive representation." *Veney*, 738 U.S. at 1193 (quoting *Mannhalt v. Reed*, 847 F.2d 576 , 580 (9th Cir. 1988)). While it is generally more difficult to show an actual conflict resulting from successive rather than simultaneous representation, in the case of successive representation an actual conflict may arise "where the subject matter of the previous representation is substantially related to the case being tried, the attorney reveals privileged communications of the former client stemming from the previous representation, or the attorney's loyalties are otherwise divided." *Veney*, 738 A.2d at 1193.

To establish an actual conflict, a defendant must "point to specific instances in the record to suggest an actual conflict or impairment of his or her interests and show that the alleged conflict of interest obstructs the use of a particular strategy or defense." *McCrimmon v. United States*, 853 A.2d 154 (D.C. 2004) (citations omitted). Where, as in this case, counsel for the defendant previously represented a witness for the government, an actual conflict of interest exists "when a defense attorney is required to make choices advancing another client's interest to the detriment of his current client's interest." *Veney v. United States*, 738 A.2d 1185, 1192 (D.C. 1999). Counsel's performance "is not adversely affected where the best interest of

22

the client 'could have dictated precisely the course suggested'" by counsel. *Veney*, 738 A.2d at 1197 (quoting *Carey v. United States*, 50 F.3d 1097, 1100 (1st Cir. 1995)).

Defendant has not alleged a conflict of interest based on simultaneous representation. Defendant's trial counsel represented Mr. Williams in a case involving unrelated charges in which Mr. Williams was sentenced in 1987, seven years prior to representing defendant whose case was filed in 1994. Defendant claims that trial counsel's prior representation of Mr. Williams "created an actual, irreconcilable conflict of interest that precluded [Magistrate Judge] Sullivan from both effectively representing Johnson and from protecting the interests of his former client." Defendant's Supplement II at 4. Defendant contends that trial counsel's failure to pursue any of his suggested strategies was motivated by a desire to protect the interests of his former client and thus constitute ineffective assistance of counsel.

The government asserts that there was no actual conflict because trial counsel did not recall previously representing Mr. Williams during the course of defendant's trial, and so had no reason or motivation to alter his trial tactics accordingly. Government's Opposition II at 12. The government offers as evidence a signed affidavit from trial counsel, in which he avers that he did not discover his previous representation of Mr. Williams during defendant's trial because of a spelling error in his data bank and that he did not have or utilize any confidential information acquired from his prior

23

representation of Mr. Williams. Government's Opposition II, Appendix G at 1, 4. It is important to note, without dispute by the defendant, that trial counsel also asserts that between his representation of Mr. Williams and that of defendant seven years and hundreds of clients had passed. Government's Opposition II, Appendix G at 1-2.

While defendant points out that such a claim is difficult to objectively assess, Defendant's Supplement II at 9, it remains that Mr. Williams' prior offenses were not substantially related to the subject matter tried in defendant's case. In his affidavit, trial counsel avers that he did not investigate Mr. Williams' previous convictions for second degree theft and unlawful entry because he "did not see how they could have aided a self-defense claim." Government's Opposition II, Appendix G at 4. Indeed, there is no indication that such offenses, having occurred several years before the killing, would have had a significant impact on Mr. Williams' credibility, especially in light of the corroborative testimony of the other eyewitnesses. Nor is there any indication that the victims of Mr. Williams' crimes were available or willing to testify, let alone that introducing their testimony would have established Mr. Williams as the aggressor in defendant's case.

There is similarly no evidence that trial counsel's decision not to impeach Mr. Williams with evidence of his prior convictions or his failure to request an impeachment instruction for the jury was the product of divided loyalties. As noted above, the government impeached Mr. Williams with his prior convictions during his direct testimony, and defendant's trial counsel

24

did not repeat the impeachment on cross-examination.  The trial court did not give the impeachment instruction immediately after Mr. Williams was impeached but gave it during the final instructions.  Magistrate Judge Sullivan remarks in his affidavit that he deliberately opted not to request the impeachment instruction immediately following Mr. Williams' impeachment, stating:

> I did not ask for an impeachment instruction to be given immediately after the government elicited these prior convictions from Mr. Williams because he was a government witness and that instruction would have been witness favorable in this instance.  I knew the Court would instruct the jurors that they may use a witnesses [sic] prior convictions for their use in considering the credibility of that witness at the conclusion of the trial, and Judge Kotelly did instruct the jurors on the use of prior convictions.

Government's Opposition II, Appendix G at 5.  Defendant offers no evidence that this decision was motivated by a division of loyalties or other conflict of interest.  Trial counsel's strategies reflect a realistic course that does not appear to be significantly less effective than the course advocated by defendant, nor do they appear deliberately calculated to protect Mr. Williams' interests.

Furthermore, as the government points out, defendant fails to show that evidence of the specific underlying facts of Mr. Williams' 1985 conviction for second degree theft and unlawful entry would have been admissible at defendant's trial.  Defendant suggests that testimony from victims of Mr. Williams' prior offense should have been admitted for the purpose of proving that Mr. Williams was "the aggressor in the instant case."  Defendant's

25

Supplement II at 10.  Generally, a defendant is "entitled to advance in his defense, any evidence which may rationally tend to refute his guilt or buttress his innocence of the charge made." *Battle v. United States*, 754 A.2d 312, 316 (D.C. 2000).  Defendant must also show "proof of facts or evidence which tend to indicate some reasonable possibility that a person other than the defendant committed the charged offense." *Winfield v. United States*, 676 A.2d 1, 4 (D.C. 1996).  Further, in determining whether to admit such evidence, a trial court must "balance the probative value 'against the risk of prejudicial impact.'" *Winfield*, 676 A.2d at 5 (quoting *Punch v. United States*, 377 A.2d 1353, 1358 (D.C. 1977)).  Mr. Williams' prior convictions, however, involved an incident that had nothing in common with the instant offense and as such, extrinsic evidence of the conviction would not have been admissible because it lacks probative value.[4]

Defendant has failed to demonstrate that trial counsel's prior representation of Mr. Williams resulted in an actual conflict of interest adversely affecting representation of defendant.  Defendant has not highlighted specific instances where his interests have been impaired or shown any trial strategies that but for the prior representation, trial counsel would have taken.  Therefore, defendant's claim of ineffective assistance of trial counsel due to conflict of interest has no merit.

---

[4] The Court recognizes that Mr. Williams was initially charged with crimes of violence, but he was convicted of and admitted guilt to two non-violent misdemeanors. Moreover, in this litigation, defendant has not submitted any evidence to the contrary.  The Court of Appeals has noted that evidence of a witness' prior bad acts that do not rise to the level of a conviction "may be elicited only by cross-examination of the witness; it may not be proved by extrinsic evidence." *Sherer v. United States*, 470 A.2d 732, 738 (D.C. 1983).

HUNTERB 09/19/200 6 41 52 PM

**D.    Defendant's *Brady* Claim Is Procedurally Barred.**

Defendant's claim of prosecutorial misconduct based on failure to disclose exculpatory information that must be disclosed under *Brady v. Maryland* is also procedurally barred.  373 U.S. 83 (1963).  Defendant has shown neither cause nor prejudice sufficient to overcome the procedural bar for his *Brady* claims.

Defendant argues that his failure to raise his *Brady* claim in a previous proceeding was the result of intentional suppression by the prosecution prior to trial.  Defendant's Motion at 25.  Defendant further claims that the trial record was sufficiently ambiguous so as to preclude him from raising the claims on direct appeal.  Defendant's Reply at 8.  Defendant cites to several instances in the trial record that he considers constitute *Brady* evidence.  Defendant's Motion at 11-18.  The facts defendant alleges to have been suppressed prior to trial were clearly then available during the pendency of his first appeal and during his first § 23-110 motion.  Specifically, defendant claims that the following facts which emerged during trial constituted exculpatory or impeaching evidence that was suppressed by the government prior to trial:

> (a) Ms. Nash saw Mr. Williams with a gun in his possession prior to the shooting, despite Mr. Williams' testimony to the contrary;
>
> (b) Ms. Nash admitted to having a gun and ammunition in her possession;
>
> (c) Mr. Williams removed Mr. Nash's gun from the scene of the shooting before turning it over to police;

27

(d) Mr. Williams testified that he fired Mr. Nash's gun at defendant as defendant was fleeing the scene, but Mr. Nash's gun was "inoperative" and fully loaded when turned over to the police;

(e) Ms. Gary testified that she disposed of a gun that had been in her possession before speaking with police;

(f) Ms. Gary and Mr. Williams were involved in a romantic relationship;

(g) Ms. Gary had been a paid informant for Detective Pamela Reed of the Metropolitan Police Department;

(h) Mr. Williams was arrested on July 7, 1994, on charges of Robbery and Receiving Stolen Property, both of which were no papered.

Defendant's Motion at 11-18.

Defendant has not established that the government's failure to disclose the alleged *Brady* evidence had a prejudicial effect on the outcome of the trial. With allegations of *Brady* violations, the Supreme Court has stated that unless undisclosed evidence is "material" for *Brady* purposes, its suppression is insufficient to overcome a procedural bar. *Strickler v. Greene*, 527 U.S. 263, 282 (1999). Evidence is "material" if "there is a reasonable probability that, had the evidence been disclosed . . . the result of the proceeding would have been different." *Strickler*, 527 U.S. at 280. Here, defendant contends that the facts listed above, were they disclosed prior to trial, would have served the defense by casting doubt on the credibility of the government's witnesses and establishing Mr. Williams as the aggressor. As noted above, however, these facts were eventually revealed during the course of the trial. There is no indication that defendant

28

would have pursued a significantly different defense strategy armed with the alleged *Brady* evidence, nor that the verdict would have been different but for the suppression of that evidence. Therefore, defendant's *Brady* claims are procedurally barred.

### E.    Assuming that Defendant's *Brady* Claim Was Not Procedurally Barred, the Claim Has No Merit

Even if defendant's *Brady* claims were not procedurally barred, defendant has not demonstrated that the evidence at issue was material or would have a reasonable probability of resulting in a different verdict. In *Brady v. Maryland*, the Supreme Court held that the "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment." 373 U.S. at 87. The prosecutor has a duty to disclose favorable evidence even if there has been no request for such information by the accused, including both impeachment and exculpatory evidence. *Strickler*, 527 U.S. at 280 (citations omitted). Such evidence is "material" "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler*, 527 U.S. at 280 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). Therefore, in order to constitute a true *Brady* violation, the evidence in dispute "must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler*, 527 U.S. at 281-82.

Defendant has not shown that the alleged *Brady* evidence, if disclosed prior to trial, would have had a reasonable probability of resulting in a different verdict. Defendant contends that a new trial is warranted because he and trial counsel "would have made efficient use at trial of the governments [*sic*] mid-trial revelation of exculpatory and impeachment evidence/material." Defendant's Motion at 10. Defendant asserts that the facts had the potential to undermine the testimony and credibility of Mr. Williams, Ms. Gary, and Detective Reed, and that testimony describing a gun in the possession of Mr. Williams may have been sufficient to establish him as the aggressor. Defendant's Motion at 19-20. Defendant further claims that the disclosure of pre-existing relationships between Ms. Gary and Mr. Williams and between Ms. Gary and Detective Reed prior to trial would have enabled him to establish bias on all three parties that would further discredit their testimony. Defendant's Motion 20-21.

There is no indication that the information above, had it been disclosed prior to trial, would have had a reasonable probability of affecting the outcome of the trial. Indeed, the above facts were eventually disclosed in open court during witness testimony and were available for the jury to consider with regard to the credibility of each witness. The facts had no discernible effect on the verdict. Defendant similarly has not demonstrated that prior knowledge of any of the above facts would have substantially altered the course of his defense strategy.

In addition, defendant has not shown that evidence of Mr. Williams'
1994 arrest, though admissible at trial, would have had a prejudicial effect.
As the Court of Appeals has noted, "[i]t is generally true that prior arrests
(save for reputation issues) are not admissible in evidence and are not
proper subjects of cross-examination, even for credibility purposes," but
"[o]ne area of cross-examination...[that] is always open...is the attempt to
demonstrate bias or testimonial motivation of government witnesses."
*Coligan v. United States*, 434 A.2d 483, 485 (D.C. 1981). The *Coligan* Court
held admissible evidence "such as a pending charge or probationary status"
because "the witness may have a motive to curry favor by testifying for the
government." *Coligan*, 434 A.2d at 485. Here, though evidence of Mr.
Williams' arrest may have been admissible as bias evidence, the case was
no papered, and there is no evidence the dismissal was the result of a
government deal with Mr. Williams, and any impact of this evidence would
have been minimal. As the government notes, evidence that Mr. Williams
was arrested but not charged or convicted under circumstances that did not
resemble the instant offense in any significant way is insufficient to establish
a reasonable possibility that Mr. Williams was the shooter. Government's
Opposition II at 25.

Defendant has not shown that the alleged *Brady* evidence, if
disclosed prior to trial or introduced as defendant's evidence, would have
presented a reasonable possibility of a different verdict. Therefore,
defendant's *Brady* claim has no merit.

31

### F.    An Evidentiary Hearing on This Motion is Unnecessary

Defendant contends that he is entitled to hearing on the issues addressed in the instant motion. Defendant's Reply at 10. When a defendant brings a § 23-110 motion, a court shall "grant a prompt hearing [to] determine the issues" unless the record conclusively demonstrates that the defendant is not entitled to a hearing. D.C. Code § 23-110(c).

> Claims of ineffective assistance of trial counsel raised pursuant to D.C. Code § 23-110 will usually require a hearing since the trial record will not typically provide the trial court, or [the appellate court], with a basis on which to determine whether allegations of ineffectiveness can be rationally explained as reasonable tactical decisions by trial counsel.

*Gibson v. United States,* 388 A.2d 1214, 1216 (D.C. 1978). There is a strong presumption for an evidentiary hearing, since such a claim usually involves matters outside the trial record. *See Ready v. United States,* 620 A.2d 233 (D.C. 1993); *Webster v. United States,* 623 A.2d 1198 (D.C. 1993). Furthermore, because a § 23-110 motion provides a habeas corpus-type remedy, any question whether a hearing is appropriate should be resolved in the affirmative. *See Head v. United States,* 626 A.2d 1382 (D.C. 1978).

A court need not conduct an evidentiary hearing and may summarily deny a motion when the record and documents of the case conclusively demonstrate that the defendant is not entitled to relief. *See Reaves v. United States,* 694 A.2d 52 (D.C. 1997). Likewise, a hearing is unnecessary if the allegations of the motion itself are vague and conclusory, wholly incredible, or even if true, would merit no relief. *See Matthews v. United States,* 629 A.2d 1185 (D.C. 1993); *accord Smith v. United States,* 608 A.2d

32

129 (D.C. 1992). Even then, a defendant is entitled to a hearing only when the motion involves matters outside the trial record and cannot be resolved by the case files. *See Hanna v. United States*, 666 A.2d 845 (D.C. 1995); *Shepard v. United States*, 533 A.2d 1278 (D.C. 1987).

Here, the defendant has not shown how an evidentiary hearing would establish any facts that would be relevant to the issues before the Court. This case also does not present the Court with competing affidavits. Though defendant has submitted two affidavits and the government submitted an affidavit from Magistrate Judge Sullivan, the affidavits do not conflict at all. Defendant alleges that he was never told of Magistrate Judge Sullivan's prior representation, and Magistrate Judge Sullivan states that he was not aware of his prior representation of Mr. Williams at the time of his representation of defendant. No conflict is alleged because both Magistrate Judge Sullivan and defendant agree that defendant was not advised of the prior representation of Mr. Williams. As such, the record conclusively demonstrates that defendant is not entitled to the relief he seeks and as such, a hearing is not warranted.

Accordingly, it is hereby this 19th day of August, 2008,

ORDERED, that defendant's Motion for a New Trial shall be **DENIED**, and it is

FURTHER ORDERED, that Attorney Joseph Bernard's Motion to Withdraw shall be **GRANTED** *nunc pro tunc* to April 29, 2008.

33

HUNTERB 08/19/2008 6:41:52 PM

*Russell F. Canan*

**RUSSELL F. CANAN**
**JUDGE**
**(Signed in Chambers)**

Copies to:

Carolyn Kolben, Esq.
Office of the United States Attorney
555 Fourth Street NW
Washington, DC 20530

Joseph Bernard, Esq.
5425 Connecticut Avenue, N.W. #318
Washington, D.C. 20015

Duane Johnson
Fed. Reg. #09202-007
FCI Petersburg Medium
Federal Correctional Institution
P.O. Box 90043
Petersburg, VA 23804

34

HUNTER/B 08/19/2008 6 41:52 PM