# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| DUANE JOSEPH JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 09-2056 (RBW) |
| ) | |
| FREDERICK J. SULLIVAN, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## <u>MEMORANDUM OPINION</u>

This matter is before the Court on the defendants' motions to dismiss.  For the reasons discussed below, the motions will be granted.

## I.  BACKGROUND

### A.  *Proceedings in the Superior Court of the District of Columbia*

To better understand the plaintiff's allegations and the defendants' arguments for dismissal, it is helpful to review the underlying conduct leading to the criminal prosecution of the plaintiff and the post-conviction proceedings in the District of Columbia courts.

### 1.  Evidence of the Crimes For Which the Plaintiff Was Convicted

Evidence at the plaintiff's trial established that, on April 25, 1994, the plaintiff was in a car (seated behind the driver) with five other people: Victor Williams (seated behind the passenger), Keith Nash (the driver), Sharon Nash (seated in the front passenger seat), Latina Gray, and Damitra Rowell (both seated in the middle of the rear seat).  Memorandum of Points and Authorities in Support of Defendant Abraham C. Blitzer's Motion to Dismiss for Failure to

State a Claim Upon Which Relief Can Be Granted ("Blitzer Mem."), Exhibit ("Ex.") 1 (Order, *Johnson v. United States*, No. F-4696-94 (D.C. Super. Ct. Aug. 19, 2008)) at 10. The parties' theories of the case were described as follows:

> The government's theory of the case was that after [the plaintiff] refused to discount his drugs and the car's occupants bought from a different dealer, [the plaintiff] entered the car with the intent of robbing the decedent, Mr. Nash, and his companions. Ms. Rowell testified for the government that she and [the plaintiff] approached Mr. Nash and asked for a ride. Once inside the car [the plaintiff] ordered Mr. Nash to drive into an alley, cut the ignition, and give him money. Mr. Nash replied that he had no money, and Ms. Nash attempted to pass a gun and a bag of bullets to Mr. Nash. [The plaintiff] shot Mr. Nash, fired again – injuring Ms. Nash – and struggled with Mr. Williams over the gun before fleeing with the gun down the alley. As [the plaintiff] ran away, Mr. Williams fired at him twice with the gun he had taken from Mr. Nash's hand.

> The defense theory was that [the plaintiff] approached the car in response to a request from Mr. Williams, that it was Mr. Williams who directed the car into the alley, . . . and who then pointed a gun at [the plaintiff] and demanded his drugs and money. According to [the plaintiff], he and Mr. Williams struggled over the gun and shots went off during the struggle before [the plaintiff] was able to free himself from the car and run away. Mr. Williams shot [at the plaintiff] as he ran down the alley. [The plaintiff] was the only witness for the defense [and he] admitted that he had been selling drugs around the time of the shooting.

*Id.* at 10-11 (internal citations omitted).

### 2. The Plaintiff's Convictions and Post-Conviction Proceedings

On January 19, 1995, the plaintiff was found guilty of first degree felony murder while armed, second degree murder while armed, assault with intent to kill while armed, assault with a deadly weapon, attempted robbery while armed, possession of a firearm during a crime of violence, and carrying a pistol without a license. Blitzer Mem., Ex. 1 at 2. The court imposed a sentence of 30 years to life imprisonment for first degree felony murder while armed; 15 years to

life imprisonment for second degree murder while armed, 15 to 45 years for assault with intent to kill while armed; one to three years for assault with a deadly weapon; 10 to 30 years for attempted robbery while armed; five to 15 years for possession of a firearm during a crime of violence; and one year for carrying a pistol without a license. *Id.* The sentences imposed for attempted robbery while armed and second degree murder while armed were designated to run concurrently with the sentence for first degree felony murder while armed; the sentence imposed for carrying a pistol without a license was designated to run concurrently with the sentence for possession of a firearm during a crime of violence; and all other sentences were designated to run consecutively. *Id.* The plaintiff timely appealed his convictions, and the District of Columbia Court of Appeals affirmed. *Id.* at 2-3. However, the matter was remanded to the trial court so that those convictions the appellate court found had merged (the murder convictions merged and the felony murder and the underlying felony convictions merged) could be vacated. *Id.* Accordingly, on remand, the convictions for attempted robbery while armed and second degree murder while armed were vacated. *Id.* The plaintiff then unsuccessfully sought to have his sentences reduced under Rule 35(b) of the Superior Court Rules of Criminal Procedure and the District of Columbia Court of Appeals denied his petition for rehearing or rehearing *en banc*. *Id.*

### The Plaintiff's First § 23-110 Motion

In February 1998, the plaintiff filed two similar *pro se* motions in the Superior Court of the District of Columbia ("Superior Court") under D.C. Code § 23-110 (2001) to vacate his sentence, arguing ineffective assistance of counsel, and on March 6, 1998, the court appointed Abraham Blitzer, Esq. ("Blitzer"), to represent him. Blitzer Mem., Ex. 1 at 3. On October 1,

1998, Blitzer filed a motion for new trial under D.C. Code § 23-110, arguing ineffective assistance of trial counsel, Frederick J. Sullivan, Esq. ("Sullivan"), who allegedly failed to (1) adequately prepare the plaintiff for his testimony, (2) offer into evidence the decedent's prior criminal conviction, and (3) adequately cross-examine an eyewitness.[1]  *Id.* at 3-4.  The government opposed the motion, asserting that Sullivan sufficiently prepared the plaintiff to testify, that the decision not to use the decedent's conviction was tactical, and that the cross-examination was adequate.  *Id.* at 4.  The trial judge held an evidentiary hearing on June 29, 1998, at which both the plaintiff and Sullivan testified.  *Id.*  The motion was denied, and the ruling was affirmed on appeal.  *Id.*

The Plaintiff's Second § 23-110 Motion

On April 9, 2002, the plaintiff filed a second motion under D.C. Code § 23-110 in which he alleged trial error in instructing the jury "that [a finding that the plaintiff was] the aggressor precluded a finding that he acted in self-defense."  Blitzer Mem., Ex. 1 at 4.  On July 23, 2002, the Superior Court received a letter from the plaintiff which it construed as a motion to withdraw this second § 23-110 motion or, alternatively, to deny it without prejudice.  *Id.* at 5.  The court granted the motion on August 20, 2002.  *Id.*

The Plaintiff's Third § 23-110 Motion

In the plaintiff's third motion under D.C. Code § 23-110, filed on December 1, 2005, he alleged that he was precluded from raising in his first § 23-110 motion a claim that Sullivan's promise to call to witnesses to corroborate his version of events induced him to plead not guilty rather than to entering an *Alford* plea, and that Sullivan's failure to call these witnesses

---

[1]     Sullivan became a Magistrate Judge of the Superior Court in 2005.

4

constituted ineffective assistance of counsel.[2]  Blitzer Mem., Ex. 1 at 6.  On May 8, 2007, the

court denied this motion as procedurally barred.  *Id.* at 8.

The Plaintiff's Fourth § 23-110 Motion

Papers comprising the plaintiff's fourth motion under D.C. Code § 23-110, including a

motion for a new trial filed on the plaintiff's behalf by Joseph Bernard, Esq. ("Bernard") on

December 10, 2007, raised three claims: (1) Blitzer provided ineffective assistance of counsel by

failing to raise a claim that Sullivan's failure to introduce two defense witnesses induced the

plaintiff to plead not guilty rather than enter an *Alford* plea; (2) Sullivan provided ineffective

assistance of counsel due to a conflict of interest arising from his prior representation of Victor

Williams, a government witness, and this conflict prevented Sullivan from investigating and

pursuing the defense theory that Williams was the shooter, impeaching Williams with his prior

convictions, introducing testimony from other victims of acts of violence committed by

Williams, and advising the plaintiff of his right to note an appeal on resentencing after remand,

and (3) the plaintiff is entitled to a new trial because the government failed to disclose what he

characterized as favorable or exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83

(1963).  Blitzer Mem., Ex. 1 at 7-9.  Bernard moved to withdrew his appearance on April 29,

2008, *id.* at 8, and the court granted the motion *nunc pro tunc* on August 18, 2008, *id.* at 33.

Upon consideration of the plaintiff's motion and the government's opposition, the court

found that the plaintiff's claim of ineffective assistance of counsel by Blitzer arising from his

---

[2]  "Pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970), a defendant is not
required to acknowledge actual culpability to enter a guilty plea."  *United States v. Singh*, 305 F.
Supp. 2d 109, 112 n.7 (D.D.C. 2004) (Walton, J.); *see Corley v. U.S. Parole Comm'n*, No.
08-1342 , 2009 U.S. Dist. LEXIS 75893, at *3 n.3 (D.D.C. Aug. 26, 2009) ("An *Alford* plea is
one where the defendant enters a guilty plea while maintaining his innocence.").

alleged failure to uncover information as to Sullivan's promise to call two additional witnesses was procedurally barred because the plaintiff could have raised this issue in his first § 23-110 motion, and the plaintiff did not show good cause for not having done so.  *Id*. at 13.  The court also found that the testimony of the two additional witnesses would have been duplicative of testimony presented by Rowell, Williams and Gary, and it was not unreasonable for Sullivan not to call them.  *Id.* at 13-14.  Moreover, the court concluded that the plaintiff had no constitutional right to the effective assistance of counsel on a post-conviction matter, and even if there were such a right, Blitzer's performance was not ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984).  *Id.* at 14.

Similarly, the court found that the plaintiff's claim of ineffective assistance of trial counsel was procedurally barred, *see* D.C. Code § 23-110(e),[3] because he raised the identical issue (ineffective assistance of counsel) in the first § 23-110 motion, albeit under a different theory based on different facts (the alleged conflict of interest arising from Sullivan's prior representation of Victor Williams).  *Id.* at 16.  In the alternative, the court found that the plaintiff's "motion [was] procedurally barred as an abuse of the writ."  *Id.*  Lastly, the court discussed at length how the plaintiff neither demonstrated cause for his failure to raise the ineffective assistance of counsel claim earlier nor prejudice as a result of his failure to raise the claim in the prior motion.  *Id.* at 17-21.

Even if the claim were not procedurally barred, the court found that the claims were meritless.  With respect to the plaintiff's allegations of Sullivan's conflict of interest, the court

---

[3]     "The court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner."  D.C. Code § 23-110(e).

found that no actual conflict existed based on simultaneous representation of the plaintiff and Victor Williams. *Id.* at 24-26. The court noted that Sullivan did not recall his previous representation of Mr. Williams, and "seven years and hundreds of clients had passed" between his representation of Mr. Williams and his representation of the plaintiff. *Id.* at 24. The court further observed that Mr. Williams' prior cases were not substantially related to the subject matter of the plaintiff's criminal case, and Sullivan represented that he "did not investigate Mr. Williams' previous convictions for second degree theft and unlawful entry because he 'did not see how they could have aided a self-defense claim.'" *Id.* The court reasoned that even assuming the evidence of Mr. Williams' prior convictions would have been admissible at trial, the convictions did not appear to have any bearing on his credibility "especially in light of the corroborative testimony of the other eyewitnesses," and there was no indication that the victims of Mr. Williams' crimes either were available to testify or would have established that Mr. Williams was the aggressor in the plaintiff's case. *Id.* Further, the court observed nothing in the record suggesting that Sullivan's decision not to impeach Mr. Williams' credibility with evidence of his prior convictions was a product of divided loyalties. *Id.* at 24-25. In the final analysis, the court found that the plaintiff "failed to demonstrate that [Sullivan's] prior representation of Mr. Williams resulted in an actual conflict of interest adversely affecting representation of the plaintiff. *Id.* at 26.

With respect to the plaintiff's allegation of prosecutorial misconduct based on the prosecutor's failure to turn over *Brady* material, the court found the claim procedurally barred, as the argument was "available during the pendency of his first appeal and during his first § 23-110 motion," *id.* at 27, and the plaintiff failed to establish that the alleged *Brady* violation "had a

prejudicial effect on the outcome of the trial, *id.* at 28. Moreover, the court found that the claim had no merit absent a showing by the plaintiff "that the alleged *Brady* evidence, if disclosed prior to trial, would have had a reasonable probability of resulting in a different verdict." *Id.* at 30. The court observed that the evidence allegedly withheld by the prosecutor, Steven J. McCool ("McCool"), was "eventually disclosed in open court during witness testimony, and [was] available for the jury to consider with regard to the credibility of each witness," and, therefore, "the facts had no discernible effect on the verdict." *Id.* The court also found that the plaintiff failed to demonstrate "that prior knowledge of any of [these] facts would have substantially altered the course of his defense strategy." *Id.*

### B. Allegations in the Plaintiff's Complaint

Sullivan, Blitzer and Bernard "represented [the plaintiff] in a criminal matter in the Superior Court of the District of Columbia," and Sullivan also represented him "in a criminal appeal that was litigated before the District of Columbia Court of Appeals." Complaint ("Compl.") ¶ 7. According to the plaintiff, these defendants, with whom he maintained an attorney-client relationship, *id.* ¶ 7, committed legal malpractice, *see id.* ¶¶ 17-25, and breached their fiduciary duties, *see id.* ¶¶ 27-38, resulting in the plaintiff's "inability to prepare and present a criminal defense . . . [and] loss of [his] liberty," *id.* ¶ 15.

The plaintiff alleges that Sullivan represented him from May 1994 through October 1996, Compl. ¶ 27, in a criminal matter "after having previously represented a . . . witness" who testified against him at trial, and that Sullivan failed to inform him of this alleged conflict of interest, *id.* ¶ 17; *see id.* ¶ 28. In addition, he alleges that Sullivan failed to investigate the former client's criminal background, failed to object to his resentencing in absentia, failed to

object to the alleged withholding of exculpatory evidence and impeachment material, and failed to prepare the plaintiff to testify in his defense, among other trial errors. *Id.* Because of these failures, the plaintiff alleges that he had no "opportunity to present a complete defense at his criminal trial [or to] present relevant argument" on appeal, resulting in his loss of liberty. *Id.* ¶ 18.

The plaintiff contends that Blitzer represented him from March 1998 through August 1999, Compl. ¶ 31, "during post trial relief proceedings," which included the filing of "a motion for a new trial on [the plaintiff's] behalf." Blitzer Mem. at 5-6.[4] According to the plaintiff, Blitzer failed "to investigate and incorporate facts into his motion for [a] new trial . . . regarding [Sullivan's] conflict of interest," as well as Sullivan's "intentional interference with . . . plea negotiations." Compl. ¶ 20. In addition, the plaintiff asserts that Blitzer "failed to investigate and incorporate . . . into his motion . . . defendant McCool's suppression of exculpatory and impeachment materials." *Id.* ¶ 32.a. These failures, according to the plaintiff, allegedly deprived him of "an opportunity to present all claims during post-conviction proceedings." *Id.* ¶ 21.

Bernard, who was retained by the plaintiff in 2008, allegedly failed to file a timely notice of appeal of the denial of the motion for a new trial. Compl. ¶ 23.a; *see id.* ¶ 35.a. The plaintiff claims that "[t]he acts of defendant Bernard . . . caused [him] to expend unnecessary funds and labor in order to have a notice of appeal constructed and filed." *Id.* ¶ 24; *see id.* ¶ 37.

McCool was the prosecutor, *see id.* ¶¶ 12, 40, and the plaintiff asserts that he "falsely represented himself as being an Assistant U.S. Attorney" to the grand jury, the petit jury, the

---

[4]     Blitzer states that he represented the plaintiff from May 1998 through July 1999. Blitzer Mem. at 5. This inconsistency concerning the dates of representation has no bearing on the resolution of the merits of this matter.

presiding judge, the plaintiff and others, *id.* ¶ 40, because he had not taken the appropriate oath of office, *id.* ¶ 41. In addition, McCool allegedly interfered with the plaintiff's "business expectancies" by "committing fraud, unfair and deceptive trade practices, and unfair competition." *Id.* ¶ 54. Specifically, he contends that McCool failed to disclose Sullivan's conflict of interest, *id.* ¶ 55, and falsely represented himself as a federal prosecutor, *id.* ¶ 61, leaving the plaintiff "at a complete disadvantage," *id.* ¶ 64.

The plaintiff demands a declaratory judgement declaring that all the defendants have committed malpractice, breach of fiduciary duty, fraud, intentional interference with contracts and prospective contractual relations, unfair competition, unfair and deceptive trade practices and unjust enrichment. *Id.* ¶ 67. He demands "general and special damages in the amount of $5,000,000," "punitive damages" and an award of "reasonable costs." *Id.* at 19.

## II. DISCUSSION

### A. *Dismissal Under Rule 12 of the Federal Rules of Civil Procedure*

#### 1. Subject Matter Jurisdiction

"A motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(1) presents a threshold challenge to the court's subject matter jurisdiction." *Sledge v. United States*, No. 06cv742, 2010 WL 2745788, at *3 (D.D.C. July 13, 2010); *see Bell v. Hood*, 327 U.S. 678, 682 (1946). A complaint is subject to dismissal on jurisdictional grounds "when it 'is patently insubstantial,' presenting no federal question suitable for decision." *Tooley v. Napolitano*, 586 F.3d 1006, 1009 (D.C. Cir. 2009) (quoting *Best v. Kelly*, 39 F.3d 328, 330 (D.C. Cir. 1994)); *see Lydonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 701 (2d Cir. 2000) (quoting *Bell*, 327 U.S. at 682-83) ("Federal question jurisdiction exists whenever the complaint states a cause of action under

federal law that is neither 'clearly . . . immaterial and made solely for the purpose of obtaining jurisdiction' nor 'wholly insubstantial and frivolous.'").

Federal district courts are courts of limited jurisdiction and "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). "The basic statutory grants of federal-court subject-matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006). Under 28 U.S.C. § 1331 (2006), "federal district courts . . . have original jurisdiction [in] all civil actions arising under the Constitution, laws or treaties of the United States," and may have jurisdiction over common law disputes that arise between "citizens of different States" where the amount in controversy exceeds $75,000, *see* 28 U.S.C. § 1332(a)(1) (2006).

In assessing whether a complaint sufficiently alleges subject matter jurisdiction, the Court accepts as true the allegations of the complaint, *see Ashcroft v. Iqbal*, __ U.S. __, __, 129 S. Ct. 1937, 1949 (2009), and must liberally construe the pleadings such that the plaintiff benefits from all inferences derived from the facts alleged, *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004). However, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 129 S. Ct. at 1949 (internal citations, quotation marks and brackets omitted); *see Amiri v. Gelman Mgmt. Co.*, No. 08-1864, 2010 WL 3271247, at *2 (D.D.C. Aug 19, 2010); *cf. Doe v. Holy See*, 557 F.3d 1066, 1073-74 (9th Cir. 2009) (commenting that the court requires only a short and plain statement of the grounds for its jurisdiction and the claim for relief) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

## 2. Failure to State a Claim Upon Which Relief Can Be Granted

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A motion under Rule 12(b)(6) does not test a plaintiff's likelihood of success on the merits; rather, it tests whether a plaintiff properly has stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 924 (1978). "When ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Atherton v. District of Columbia Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)) (other citations omitted). Although "detailed factual allegations" are not required to withstand a Rule 12(b)(6) motion, a plaintiff must offer "more than labels and conclusions" to provide "grounds" of "entitle[ment] to relief." *Twombly*, 550 U.S. at 555. Or as the Supreme Court more recently stated, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). A complaint alleging facts that are "merely consistent with a defendant's liability, . . . stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly* 550 U.S. at 557) (brackets and internal quotation marks omitted).

Blitzer reasonably characterizes this lawsuit as one "for professional malpractice and breach of fiduciary duty arising out of [his] post-conviction representation of the [p]laintiff in a criminal matter in the Superior Court of the District of Columbia."  Defendant Abraham C. Blitzer's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted ¶ 1. He moves to dismiss on the ground that plaintiff cannot "demonstrate that, but for . . . Blitzer's alleged negligence, the outcome of [the plaintiff's] post-conviction application for relief would have concluded in his favor."  *Id.* ¶ 2.

Under District of Columbia law, in order to show that an attorney has been negligent, the plaintiff must prove:

> (1) that there is an attorney-client relationship; (2) that the attorney neglected a reasonable duty; and (3) that the attorney's negligence resulted in and was the proximate cause of a loss to the [plaintiff].

*Chase v. Gilbert*, 499 A.2d 1203, 1212 (D.C. 1985).  The plaintiff "must show that his attorney's negligence caused a legally cognizable injury," meaning that he "could have fared better in reaching the ultimate goal sought . . . or that there would have been a difference in the trial's [, or in the context of Blitzer's representation, the post-trial's] outcome."  *Id.* (internal quotation marks and citations omitted); *Niosi v. Aiello*, 69 A.2d 57, 60 (D.C. 1949) (requiring a plaintiff to show, among other elements, that his attorney's negligence "resulted in and was the proximate cause of loss to the client").  Mistakes made "in the honest exercise of professional judgment" do not render an attorney liable for malpractice.  *Biomet, Inc. v. Finnegan Henderson LLP*, 967 A.2d 662, 665 (D.C. 2009).  In asserting such a claim, as with any claim, more than speculation is required; mere "[c]onclusory allegations of . . . harm do not allege facts that would support

causation and injury sufficient to withstand a motion to dismiss." *Herbin v. Hoeffel*, 806 A.2d 186, 196 (D.C. 2002).

As grounds for his motion to dismiss, Blitzer argues that the plaintiff is collaterally estopped from litigating one element of his negligence claim – that Blitzer's negligence resulted in or was the proximate cause of the plaintiff's loss. In other words, Blitzer argues that the plaintiff cannot now argue that, but for Blitzer's failure, judgment in the criminal case would have been in the plaintiff's favor. In the alternative, Blitzer argues that the plaintiff's claims are speculative at best.

"The Supreme Court has defined issue preclusion [or collateral estoppel] to mean that 'once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.'" *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153-54 (1979). A finding in a criminal proceeding may bar a party from relitigating the same issue in a subsequent civil action. *See Emich Motors Corp. v. Gen. Motors Corp.*, 340 U.S. 558, 568-69 (1951) (holding that "plaintiffs are entitled to introduce the prior judgment to establish prima facie all matters of fact and law necessarily decided by the conviction and verdict on which it was based"); *Otherson v. Dep't of Justice*, 711 F.2d 267, 271 (D.C. Cir. 1983) (stating that "issues determined in connection with a criminal conviction may

be taken as preclusively established for the purposes of later civil trials") (citations omitted); *see also Allen*, 449 U.S. at 105 (applying collateral estoppel in a § 1983 action based on factual claims litigated in an earlier criminal trial). In order for collateral estoppel to apply, three elements must be established:

> [1], the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case[; 2], the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case[; and 3], preclusion in the second case must not work a basic unfairness to the party bound by the first determination.

*Martin v. Dep't of Justice*, 488 F.3d 446, 454 (D.C. Cir. 2007) (quoting *Yamaha Corp.*, 961 F.2d at 254) (alterations in original).

The plaintiff counters that the doctrine of collateral estoppel does not apply in this case, relying on the District of Columbia Court of Appeals decision in *Brown v. Jonz*, 572 A.2d 455 (D.C. 1990). Plaintiff's Memorandum of Points and Authorities in Support of Plaintiff Duane Joseph Johnson's Opposition to Defendant Abraham Blitzer's Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted ("Pl.'s Opp'n to Blitzer Mot.") at 2-3. The plaintiff asserts that, under District of Columbia law, he may "sue his attorney subsequent to unsuccessfully presenting a claim of ineffective assistance of counsel before the sentencing court." *Id.* at 4. Furthermore, the plaintiff argues that Blitzer does not establish the other elements for the application of collateral estoppel because Blitzer was not a party to the criminal proceedings against the plaintiff, and because the plaintiff did not have a full and fair opportunity to litigate his claims in the course of the criminal and post-conviction proceedings. *Id.* at 5.

In *Brown*, the *pro se* plaintiff filed a civil action following his criminal conviction and sentencing which alleged that his counsel in the prior criminal proceeding "had prejudiced [his]

15

defense by failing to investigate fully his alibi defense, interview alibi witnesses, conduct proper discovery, and have a bullet analyzed in a crime laboratory and introduced at trial to corroborate his alibi." *Brown*, 572 A.2d at 456. The defendant moved to dismiss the complaint on the ground that the statute of limitations had run, and the court granted the motion. *Id.* The plaintiff appealed, and the District of Columbia Court of Appeals held that the statute of limitations did not bar the action because the plaintiff "was disabled due to his imprisonment under D.C. Code § 12-302(a) at all times that his cause of action for legal malpractice . . . could have accrued." *Id.* In a footnote, the Court of Appeals rejected the defendant's argument that the court's decision on the plaintiff's direct appeal, that the plaintiff was not deprived of his Sixth Amendment right to the effective assistance of counsel, "effectively decided [the plaintiff's] civil action for legal malpractice on the merits." *Id.* at 457 n.7. The court went on to note that its decision on direct appeal "in no way preclude[d] [the plaintiff] from bringing a civil action based primarily on [his] allegations of [counsel's] breach of contract due to negligent legal representation." *Id.*

The plaintiff's reliance on *Brown* is misplaced. The actual holding in *Brown* pertained only to the tolling of the statute of limitations while the plaintiff was incarcerated. In *Smith v. Public Defender Serv. for the Dist. of Columbia*, 686 A.2d 210 (D.C. 1996), the Court of Appeals expressly limited the *Brown* holding:

> *Brown*'s holding is limited to the proposition that legal malpractice claims are not automatically barred whenever a plaintiff has pursued unsuccessfully a claim for ineffective assistance of counsel. Different legal standards of care apply to each of these. Our decision was a rejection of the approach taken by some courts which have concluded that the standards for ineffective assistance of counsel and legal malpractice are essentially equivalent.

*Id.* at 212.

In *Smith*, following his conviction for carnal knowledge and sodomy of a young girl, the plaintiff filed a motion under D.C. Code § 23-110 alleging ineffective assistance of trial counsel due to her alleged failure to investigate his medical condition which would have rendered him impotent and therefore unable to commit the crime charged. *Smith*, 686 A.2d at 211. The trial court conducted an evidentiary hearing at which Smith and trial counsel testified. *Id.* Smith did not call any doctor or other expert witness to testify, and trial counsel represented that, based on her conversation with Smith's doctor, the medication he was taking would not have rendered him impotent. *Id.* The trial judge found that counsel's representation satisfied the requirements of the constitution and denied Smith's motion; both Smith's conviction and the trial judge's ruling on the § 23-110 motion were affirmed on appeal. *Id.* Subsequently, Smith sued trial counsel under theories of breach of contract, negligence, negligent infliction of emotional distress and deprivation of his civil rights under 42 U.S.C. § 1983. *Id.* The trial court subsequently granted the defendant's motions to dismiss and Smith appealed. *Id.* Applying the doctrine of collateral estoppel, the District of Columbia Court of Appeals held that Smith was "barred from relitigating his claims because all of the issues of fact were litigated and determined before [the sentencing judge] in the § 23-110 hearing," such that the judge's "findings from the ineffective counsel hearing preclude Smith's legal malpractice claims that [trial counsel] failed to investigate" matters allegedly bearing on Smith's ability to commit the crime charged. *Id.* at 211-12; *see Hinton v. Rudasill*, No. 09-7071, 2010 WL 2710603, at *1 (D.C. Cir. June 30, 2010) (per curiam) (concluding that the District of Columbia Circuit's " holding rejecting appellant's claim of ineffective assistance of counsel on direct appeal precludes appellant from asserting harm resulting from the loss of an opportunity to contest his state law conviction or the failure of his

attorney to inform the district court of appropriate factors to consider"). This reasoning also undermines the plaintiff's reliance on *Brown* as grounds for denying Blitzer's motion to dismiss.

The plaintiff's alternative arguments are also without merit. Without question, the Superior Court is a court of competent jurisdiction which actually and necessarily determined contested issues regarding Blitzer's representation of the plaintiff in post-conviction proceedings.

The fact that Blitzer was not a party to the criminal proceedings against the plaintiff is not determinative. Collateral estoppel may be asserted defensively, that is, to prevent litigation of an issue the plaintiff previously litigated and lost, and a defendant may assert collateral estoppel as a defense even though he was not bound by the prior judgment. *See McCord v. Bailey*, 636 F.2d 606, 609 n.1 (D.C. Cir. 1980). And it cannot be said that preclusion of the plaintiff's claims in this malpractice action work a basic unfairness, considering that the plaintiff vigorously and persistently sought post-conviction relief and he had the benefit of legal representation not only on direct appeal but also in pursuing his first and fourth § 23-110 motions. *See id.* at 610 (finding that the plaintiff "had every incentive in his criminal proceedings to argue aggressively for his claim of ineffective assistance of counsel," and that "[p]recluding reconsideration of a litigated claim" spared the defendants "the burden of defending a lawsuit on an issue that has already been fully adjudicated").

Because the doctrine of collateral estoppel bars relitigation of the adequacy of Blitzer's representation, the plaintiff cannot show that Blitzer breached a duty owed to him or that the outcome of his post-conviction proceedings would have been favorable. And where, as here, the plaintiff's breach of fiduciary duty, fraud and breach of contract claims are indistinguishable

from his legal malpractice claim, his inability to prove the malpractice claim renders these other claims unsustainable. *See Hinton*, 2010 WL 2710603, at *1 ("[A]ppellant cannot recast his malpractice claim as a breach of fiduciary duty claim . . . and he has not shown that his claims of negligence, breach of care, breach of trust, and bad faith are distinguishable from his malpractice claim."); *Macktal v. Garde*, 111 F. Supp. 2d 18, 23 (D.D.C. 2000) ("[I]f plaintiff is unable to prove his professional negligence claim, contract and tort claims which are essentially restatements of the failed malpractice claim must also fail."); *Biomet*, 967 A.2d at 670 n.4 (rejecting appellant's "attempt to recast its malpractice argument as also breach of contract and breach of fiduciary duty"). The Court will therefore grant Blitzer's motion to dismiss.[5]

### C. McCool's Motion to Dismiss

#### 1. Exhaustion of Administrative Remedies Under the FTCA

Insofar as the plaintiff demands damages due to McCool's negligence, his sole avenue for such relief falls under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671. McCool moves to dismiss the claims lodged against him for lack of subject matter jurisdiction on the

---

[5]     The arguments advanced by Blitzer apply equally to Sullivan. The Superior Court's resolution of the plaintiff's motions under D.C. Code § 23-110, three of which alleged ineffective assistance of counsel by Sullivan, prevents the plaintiff from challenging, again, the adequacy of Sullivan's representation at trial. Insofar as the plaintiff alleges ineffective assistance of appellate counsel with respect to Sullivan's representation on direct appeal, this claim, too, fails because his remedy would have been through a motion in the District of Columbia Court of Appeals to recall the mandate. *Watson v. United States*, 536 A.2d 1056, 1060 (D.C. 1987) (instructing that a motion to recall the mandate is the proper procedure for presenting a claim of ineffective assistance of appellate counsel). He failed to do so, *see Johnson v. Stansberry*, No. 10-0178, 2010 WL 358521, at *2 (D.D.C. Jan. 29, 2010), and he cannot now avail himself of a federal forum for this purpose, *see id.* For purposes of this Memorandum Opinion, the Court presumes, without deciding, that defendant Sullivan has been properly served. Further, the Court will dismiss Sullivan as a party defendant, dismiss the plaintiff's claims against him, and deny plaintiff's motion for default judgment as against him.

ground that the plaintiff did not exhaust his administrative remedies under the FTCA prior to

filing this civil action. *See* Memorandum in Support of Federal Defendant's Motion to Dismiss

("McCool Mem.") at 5-6.

Pursuant to 28 U.S.C. § 2679(d), Rudolph Contreras, Assistant United States Attorney

for the District of Columbia and Chief of its Civil Division, certifies that McCool "was acting

within the scope of his employment as an assistant United States attorney at the time of the

allegations stated in the complaint." McCool Mem., Ex. 1 (Certification dated February 16,

2010).[6] "Upon the Attorney General's certification, the tort suit automatically converts to an

FTCA action against the United States in federal court; the Government becomes the sole party

defendant; and the FTCA's requirements, exceptions, and defenses apply to the suit." *Harbury*

*v. Hayden*, 522 F. 3d 413, 416 (D.C. Cir.) (internal quotation marks and citation omitted), *cert.*

---

[6]     The plaintiff's challenge of the validity of the certification filed by McCool is
meritless. The Attorney General has delegated this certification authority to the United States
Attorney for the district where the civil action is brought to supply such certifications, *see* 28
C.F.R. § 15.4(b), and in this district the United States Attorney has redelegated this authority to
Mr. Contreras. *Id.*; *see Upshaw v. United States*, 669 F. Supp. 2d 32, 40 (D.D.C. 2009). This
certification is *prima facie* evidence that McCool was acting within the scope of his
employment, *Upshaw*, 669 F. Supp. 2d at 40, and the plaintiff fails to "raise a material dispute
regarding the substance of [Mr. Contreras'] determination by alleging facts that, if true, would
establish that [McCool was] acting outside the scope of [his] employment." *Stokes v. Cross*, 327
F. 3d 1210, 1215 (D.C. Cir. 2003).

Even if the certification were invalid, the plaintiff cannot now be allowed to undermine
the validity of the criminal proceedings on the ground that McCool had not taken a valid oath of
office. *Cf. United States v. Plesinski*, 912 F.2d 1033, 1039 (10th Cir. 1990) (rejecting argument
that failure to readminister an oath to a Special United States Attorney before his reappointment
vitiated any authorization he may have had to conduct criminal proceedings); *United States v.
Mitchell*, 136 F. 896, 906 (C.C. Or. 1905) (recognizing "[t]he principle . . . that there is a
presumption from the undisturbed exercise of a public office that the appointment to it is valid,"
and therefore a district attorney residing outside of the state was "a de facto officer" whose "right
to the office cannot be attacked collaterally").

*denied*, 129 S. Ct. 195 (2008); *see Wilson v. Libby*, 535 F.3d 697, 711 (D.C. Cir. 2008) ("The certification carries a rebuttable presumption that the employee has absolute immunity from the lawsuit and that the United States is to be substituted as the defendant.") (citations omitted), *cert. denied*, 129 S. Ct. 2825 (2009).

Generally, the FTCA provides that the "United States shall be liable [for tort claims] in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674(a) (2010). The FTCA operates as a limited waiver of sovereign immunity, rendering the United States amenable to suit for certain, but not all, tort claims. *See, e.g., Richards v. United States*, 369 U.S. 1, 6 (1962). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994) (citations omitted).

In order to maintain a suit under the FTCA, a claimant shall have "presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a) (2010). If the agency fails "to make [a] final disposition of a claim within six months after it is filed," it "shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim." *Id.* Absent such circumstances, however, the FTCA bars a plaintiff from bringing a civil action in district court before he has exhausted these administrative remedies. *See McNeil v. United States*, 508 U.S. 106, 113 (1993). A failure to exhaust administrative remedies under the FTCA cannot be cured by the passage of time or by amendment of the complaint after the six-month time period has expired. "Allowing claimants . . . to bring suit under the FTCA before exhausting their administrative remedies and to cure the jurisdictional defect by filing an amended complaint

would render the exhaustion requirement meaningless and impose an unnecessary burden on the judicial system." *Duplan v. Harper*, 188 F.3d 1195, 1199 (10th Cir. 1999); *see Schneider v. Kissinger*, 310 F. Supp. 2d 251, 269-70 (D.D.C. 2004) (FTCA claim of plaintiffs who submitted administrative claim before filing suit could not proceed upon filing an amended complaint adding FTCA claim after formal denial of administrative claim).

Here, the plaintiff submitted an administrative claim under the FTCA on September 30, 2009. McCool Mem., Ex. 2 (Claim for Damage, Injury or Death). According to the plaintiff:

> The United Sates of America permitted . . . McCool to prosecute [the plaintiff] in the Superior Court of the District of Columbia [even though] McCool was not appointed as a prosecutor at the time he prosecuted [the plaintiff] because he never took an oath of office. Nor did he execute an appointment affidavit.
>
>         *    *    *
>
> Based upon McCool's actions, [the plaintiff] was prosecuted and convicted. McCool withheld exculpatory evidence as well as impeachment evidence that support [the plaintiff's] defense. [The plaintiff] has been incarcerated since 1994 because of McCool's illicit activity and fraud.

*Id.*, Ex. 2. Prior to the submission of his administrative complaint, however, the plaintiff filed this civil action.

Review of the Court's docket shows that the plaintiff dated his complaint and application to proceed *in forma pauperis* on September 21, 2009, and the Clerk of Court received these documents in late September 2009.[7] Because the plaintiff had not submitted financial

---

[7]     It is the practice of the Clerk of Court to stamp the date of receipt of each *pro se* pleading and application to proceed *in forma pauperis* on the front of the first page of each document. Here, the "received" stamp appears in the lower left corner of the plaintiff's complaint, but the actual date of receipt is not clear on the image viewable on the Court's

(continued...)

information required under the Prison Litigation Reform Act, *see* 28 U.S.C. § 1915(a)(2) (2006), there was a delay of several weeks before the Court granted the plaintiff's application to proceed *in forma pauperis* and the Clerk officially designated his complaint as filed on October 30, 2009.

The time period within which the United States was required to respond had not expired on the date the plaintiff submitted his complaint, and the expiration of the six-month period does not cure his failure to exhaust his administrative remedies under the FTCA before filing this action. Insofar as the plaintiff brings this action under the FTCA, his claim must therefore be dismissed for lack of subject matter jurisdiction. *McNeil*, 508 U.S. at 113; *see Rodriguez v. Wiley*, No. 08-cv-02505, 2010 WL 1348017, at *5 (D. Colo. Feb. 25, 2010) (dismissing for lack of subject matter jurisdiction an FTCA claim where the defendant "presented unrefuted documentation showing that the BOP's final disposition of Plaintiff's administrative claim had not been received at the time the original Complaint was filed"); *Hoffman v. District of Columbia*, 681 F. Supp. 2d 86, 91 (D.D.C. 2010) (commenting that "the fact that the six-month period expired during the pendency of the litigation is simply of no moment.").

### 2. Prosecutorial Immunity

To the extent the plaintiff brings this action against McCool in his individual capacity, McCool argues that he is entitled to absolute or qualified immunity from the plaintiff's demands for monetary damages. McCool Mem. at 7. In response, the plaintiff argues that McCool "was not a federal attorney at the time he commenced and administered a private criminal action against [the plaintiff]," and accordingly the government cannot prevail on its absolute or

---

[7](...continued)
electronic docket – it could be either September 23, 2009 or September 28, 2009.

qualified immunity arguments.  McCool is correct.

As previously determined, at all times relevant to the complaint McCool was acting within the scope of his employment as an Assistant United States Attorney.  The plaintiff offers nothing other than the conclusory allegation to suggest otherwise.  As a federal prosecutor McCool enjoyed absolute immunity from a damages lawsuit predicated on his "initiating a prosecution and [] presenting the [government's] case" against the plaintiff.  *Imbler v. Pachtman*, 424 U.S. 409, 430-431 (1976); *see Moore v. Valder*, 65 F.3d 189, 193-94 (D.C. Cir. 1995) ("Advocatory conduct protected by absolute immunity 'include[s] the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made.'") (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)).  The Court therefore concludes that McCool is protected from the plaintiff's suit by absolute prosecutorial immunity.

## II.  CONCLUSION

Notwithstanding the labels the plaintiff assigns to the defendants' acts and omissions, he brings legal malpractice claims against his former counsel, Sullivan, Blitzer and Bernard.  The doctrine of collateral estoppel bars the plaintiff from relitigating facts or issues pertaining to the adequacy of the legal representation he received from Sullivan during his trial and by Blitzer during his post-conviction proceedings, and he therefore cannot now bring legal malpractice claims against either Sullivan or Blitzer.  McCool has established that in regard to the conduct lodged against him he was acting within the scope of his employment as an Assistant United States Attorney for purposes of the FTCA, and because the plaintiff did not exhaust his administrative remedies under the FTCA before filing this action the Court lacks subject matter

jurisdiction over the plaintiff's tort claim against McCool and thus the United States. Insofar as the plaintiff brings a claim against McCool in his individual capacity, as a federal prosecutor he enjoys absolute immunity from claims arising from his presenting the government's criminal case against the plaintiff. For all of these reasons, the Court will grant the defendants' motions to dismiss, and will dismiss all claims as against Blitzer, Sullivan, McCool and the United States. Because the remaining defendant has not yet been served, the Court will direct the Clerk of Court to re-issue summons and cause service to be effected upon Joseph J. Bernard. An Order accompanies this Memorandum Opinion.

_____/s/_____
REGGIE B. WALTON
United States District Judge

DATE: October 29, 2010